### Ex parte ROBERT.
### No. 23778.

District Court, N. D. California, S. D.
March 3, 1943.

132

Clarence E. Rust, of Oakland, Cal., for petitioner.

Frank J. Hennessy, U. S. Atty., and Joseph Karesh, Asst. U. S. Atty., both of San Francisco, Cal., for respondent.

GOODMAN, District Judge.

Sheila Robert petitioned the Court to issue a writ of habeas corpus for the release of her husband, Clarence Richard Robert, from the United States Army. The writ issued, and, in due time, Colonel Francis W. Clark, Post Commander of the Presidio of Monterey, commanding officer of Robert, responded and filed his return to the writ.

Clarence Richard Robert is referred to herein as the petitioner.

Upon the day fixed for hearing, from stipulations, testimony of witnesses and documentary evidence, the following facts developed:

"Petitioner duly registered under the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 301 et seq., with Local Board #46, at Healdsburg, Sonoma County, California, on October 16, 1940. Thereafter, on December 11, 1940, he filed his selective service questionnaire (D.S.S. Form 40.) In it he stated that he was unmarried and gave his occupation as farm laborer. He made no claim for deferment of any kind and stated in the questionnaire: 'It is my opinion that my classification should be Class 1.' (Questionnaire p. 7.)

"On February 14, 1941, he was classified 1-B by the Board. Subsequently he was re-processed, physically examined, and, on July 14, 1942, reclassified 1-A.

"On August 11, 1942, at the request of his employer, and on the ground that he was a necessary agricultural laborer, he was deferred for sixty days.

"On December 12, 1942, there was mailed to him by the Selective Service Board, an order to report for induction in the armed forces at 7 a. m. on December 22, 1942.

"On December 19, 1942 (3 days prior to the date fixed for his induction) petitioner appeared, with his wife, at the place of business of the Chairman of Selective Service Board #46, Healdsburg, California, and stated that he was a conscientious objector and delivered to the Chairman at that time the special form for conscientious objectors, (D.S.S. form 47), wherein he set forth that approximately a year prior to said time he had become a 'Jehovah Witness' and was an ordained minister of the gospel and opposed to participation in war in any form. Attached to the form (#47) was a magazine entitled 'Consolation', published by the so-called 'Watch Tower' on behalf of Jehovah witnesses and also a pamphlet entitled 'Neutrality' likewise published by 'Watch Tower Bible & Tract Society.' Simultaneously submitted to the Chairman of the Board, was a letter dated December 19, 1942, in which petitioner requested reclassification of his status pursuant to his claim as a so-called conscientious objector.

"The Chairman of the Board took it upon himself, without consultation with his colleagues, to advise the petitioner that he would be placed in class 1-A-O, (i. e. conscientious objectors who claim exemption only from *combatant* military service) and notified the clerk of the Board to make a note accordingly in the records of the Board. No action of the Board was ever taken in connection with the claim of the petitioner as a so-called conscientious objector and none of the other members of the Board were ever advised of the Chairman's action; no findings of any kind were made by the Board at any meeting, or otherwise, respecting reclassification of petitioner.

"Thereafter petitioner appeared for induction on December 22, 1942, at the Army induction station at San Francisco. He stated to the Army induction officials that he was a conscientious objector; thereupon the Army induction officials communicated with the Clerk of the Selective Service Board at Healdsburg, who confirmed that the petitioner was in 1-A-O classification. Forthwith petitioner was inducted, was noted in the records to be a 1-A-O inductee, and given a week's furlough and he thereupon returned to Healdsburg.

"On December 24, 1942, petitioner appeared before the Clerk of the Board, who, at his request, gave him a postcard which she, the Clerk, dated December 19, 1942, wherein it was stated that petitioner had been placed in Class 1-A-O. Thereafter, on the same day, petitioner filed with the Board a written notice and request to be reclassified. The notice did not state the classification desired by petitioner.

"Upon the expiration of his furlough, petitioner proceeded to the Presidio of Monterey, and has been in the armed forces since."

The Chairman of the Board testified that he had taken it upon himself, "out of the goodness of his heart," to direct the Clerk of the Board to classify the petitioner in 1-A-O and that he had never consulted any of the other members of the Board, nor had there ever been, at any time, any board action in the matter. His testimony in that regard was corroborated by all of the members of the Board, as well as by the Clerk.

Petitioner contends that the action of the Chairman of the Board, on December 19, 1942, constituted a reclassification; that petitioner's request for reclassification on December 24, 1942, reopened the case, and that until the time for appeal from the claimed reclassification of December 19, 1942 (to-wit ten days) expired, the Board was without authority to cause his induction.

I am of the opinion that petitioner has had due process in the administration of the Selective Training and Service Act, and that he has been lawfully inducted into the armed forces.

After the order to report for induction went forth on December 12, 1942, the classification of petitioner could not be reopened unless the local Board "first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control."

(Regulations under the Selective Training and Service Act of 1940, Section 626.2)

Had petitioner's classification been properly reopened and his classification considered anew (which was not done) then the order of induction would not have been effective during the period when the local Board was considering anew petitioner's classification. (Regulation 626.14.)

Here the evidence showed that the local Board at no time ever considered anew petitioner's status and never at any time made any findings with respect to any change in petitioner's status caused by circumstances over which he had no control.

Furthermore, it is obvious that no such finding could have been properly or legitimately made. Petitioner had been classified 1-A on July 14, 1942. A temporary deferment on the ground of his occupation in agriculture for sixty (60) days had been sought and obtained. For the first time, at a time but three days prior to the day fixed for his induction, he sought a change of status on the ground that he was a "Jehovah Witness." By his own statement (D.S.S. Form 47) he had been an ordained minister of this so-called sect for a year prior thereto. No uncontrolled circumstance suddenly changed his status. Hence, it appears that his claim was unseasonably made, and the fair inference follows that avoidance of duty was his objective.

The unwarranted action of the Chairman of the Board, on his own responsibility, in attempting to authorize noncombatant military duty for petitioner, while criticizable, cannot be advantaged by petitioner to support an unmeritorious claim that he was denied due process.

The writ of habeas corpus is discharged and the petition for writ of habeas corpus is dismissed.