**LANCASTER v. UNITED STATES.**

No. 4090.

Circuit Court of Appeals, First Circuit.

Feb. 19, 1946.

Alfred A. Albert, of Boston, Mass., for appellant.

Thomas P. O'Connor, Asst. U. S. Atty., of Boston, Mass. (Edmund J. Brandon, U. S. Atty., of Boston, Mass., of counsel), for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a judgment sentencing the appellant to a term of imprisonment entered after a jury had found him guilty as charged in an indictment alleging violation of § 11 of the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 311, in that, having been found acceptable, he refused to submit to induction into the Land or Naval Forces of the United States.

On October 16, 1940, the appellant registered with his local board in accordance with the above Act, and he filed his Selective Service Questionnaire with that board on December 4, following. In this document he indicated, among other things, that he was 28 years old and married, but without children, and that his wife and an invalid sister were partially dependent upon him for support. He did not indicate in Series X of the questionnaire that he had any conscientious objection to war. Being a married man with dependents he was, on December 16, 1940, appropriately classified in III A.

On October 5, 1943, deferment for the financial support of dependents being no longer authorized, the local board classified the appellant "Tent. 1," and on October 13, 1943, after a screening physical examination, classified him I A. Thereupon the appellant called at the office of his local board and obtained a Special Form for Conscientious Objector (D.S.S. Form 47) which he filled out claiming exemption from combatant military service but indicating willingness to serve in a non-combatant military capacity. He filed this form on October 21, 1943, with a letter containing the sentence: "I wish to appeal the decision of the Board, and make an appointment for a hearing of my reasons." The board did not give him a hearing but instead on October 25 minuted action "I A continued after Form 47," and then forwarded his file to the appropriate Appeal Board. On appeal his claim for classification as a conscientious objector, but one opposed only to combatant military service, was allowed, and on April 12, 1944, the local board classified him "I A.O. after appeal." [1] The appellant was duly notified of this action.

Then the appellant obtained employment in New York in defense work, and at his employer's request on August 22, 1944, he was placed in II A for six months. He was duly notified of this classification. In December, 1944, the appellant terminated his employment in New York—he says that he did so for reasons of conscience—and on February 1, 1945, his local board reclassified him in I-A-O. He admitted at the trial that he received immediate notice of this reclassification and he testified that he sent a postal card to his local board claiming an appeal therefrom. There was evidence, however, that no such card was ever received and in view of this evidence, the charge of the Court and the verdict of guilty, counsel for the appellant concedes, as he must, that for the purposes of this appeal it must be taken as a fact that no appeal was claimed within 10 days of this classification.

On March 20, 1945, the appellant submitted to a preinduction physical examination, which he passed, and on the day following he wrote a letter to his local board which gave it the first intimation that the appellant was dissatisfied with his classification of I-A-O. In this letter he said that he had always been a "complete C.O." but because of his dependents had been forced to compromise and claim conscientious objection only to combatant military service. Then he criticized the system of confining conscientious objectors opposed to any form of military service in camps. But he said that nevertheless his religious convictions were such that he wished "to be put in 4-E as a complete C.O." and then he added:

"This is, however, not what I desire most. As I see it, only as a civilian am I capable of being of constructive use to so-

---

[1] I.A.O. is the appropriate classification for conscientious objectors willing to serve in a non-combatant military capacity.

ciety. My work is teaching, and I regard that as constructive. Since the War Manpower Commission regards teaching as essential, it is not clear to me why I must be taken out of this work, and put into a C.O. camp to do 'made' work or work that I'm certainly not as good at. One of the subjects I have been teaching is Mechanical Drawing, which war industry, for other, reasons than I have, regards highly. I also coach athletics. These things I think are worthwhile, as does the W.M.C.

"It is not clear to me why the board, knowing that I will either teach and be useful, or go to a C.O. camp and be useless, need think twice.

"Perhaps I had better put it this way: that primarily I should like to appeal to be put in 2A (or whatever classification allows teachers to go on teaching) and if such has been erased or is not possible, I should, secondarily, like to appeal to be put in 4-E as a complete C.O." [2]

The local board received this letter on March 23, 1945, and a week later (March 31) it sent the appellant an order to report for induction on April 13 following. The appellant admitted that he received this order on the day after it was sent. Then on April 5 the local board minuted action "I-A-O continued," but sent the appellant no notice of its action. On April 7, the appellant wrote the local board a long letter asking for a stay of induction for further consideration of his case, with which he included a sworn summary statement of his position, and two or three days later he sought to have his induction stayed by the State Director of Selective Service. These efforts proving of no avail he reported for induction as ordered, was found acceptable for general military service, but refused to take the one step forward when his name was called which at that time constituted actual induction into the Army of the United States. Thereupon he was indicted, tried by jury, convicted and sentenced.

The appellant advances two general grounds for his appeal. First he says that the local board committed procedural errors which rendered the order given to him to report for induction void, and hence that under the doctrine of Chih Chung Tung v. United States, 1 Cir., 142 F.2d 919, he is entitled to have the judgment of sentence passed upon him reversed; and second, he says that the refusal of the court below to submit to the jury the question whether the local board, in retaining the appellant in Class I-A-O, acted arbitrarily, capriciously and contrary to law, constituted error entitling him to a new trial. We find no merit in either of the grounds advanced.

 Referring to his letter of October 21, 1943, from which we quoted one sentence at the outset of this opinion, the appellant says that the failure of the local board to grant him an opportunity to appear personally to explain his reasons for wanting his I-A classification of October 13, 1943, changed to I-A-O, rendered the subsequent order to report for induction invalid. We concede that a registrant is given the right to make a personal appearance before his local board to state his reasons for wishing a given classification (Reg. Part 625.1 (a)), and for the purposes of this case at least we may concede that a local board's refusal to permit such an appearance would render a subsequent order to report for induction invalid if the registrant were not given the classification he desired. United States v. Laier, D.C., 52 F.Supp. 392. But with respect to the I-A classification of October 13, 1943, the registrant-appellant both requested a personal appearance and claimed a timely appeal, and on appeal he was given the classification (I-A-O) which at that time was the one he wanted. Thus he gained his end without the necessity of appearing personally before his local board. A personal appearance could have given him nothing more than he gained by his appeal and thus the error of the local board in refusing to hear the appellant personally was purely a technical one which could not have prejudiced any right secured to the appellant and does not justify setting the subsequent order to report for induction aside as invalid.

The appellant next contends that his letter of March 21, 1945, from which we quoted at some length above, constituted a request by him that his classification be reopened and considered anew,[3] that the local board so treated that letter, reopened

---

[2] Obviously when this letter was written on March 21, 1945, it was too late to appeal from the classification of I.A.O. given on February 1 preceding.

[3] The pertinent parts of Regulation 626 as of March and April 1945 are as follows:

"Reopening Registrant's Classification.

"626.1 Classification Not Permanent.

(a) No classification is permanent.

\* \* \* \* \* \* \* \*

"626.2 When Registrant's Classification May be Reopened and Considered

his classification, and then reclassified him, although in the class in which he had previously been placed (1–A–O), but contrary to the regulations, failed to send him notice of this renewed classification and thus deprived him of his right to appear before the board personally and of his right to appeal.

The part of the regulations quoted from above clearly indicate that upon receipt of a request to reopen a registrant's classification and consider it anew the local board must first determine whether the written evidence submitted is sufficient to warrant granting the request or whether it is not. If the local board determines that the evidence adduced does not warrant favorable action on a request to reopen, then the classification previously made stands unchanged and no new notice of classification is required. But if on the other hand the evidence submitted is considered sufficient to support a request to reopen and reopening is granted, the registrant must be classified "in the same manner as if he had never before been classified." Thus even though the new classification given after reopening is the same as the old one previously held, a registrant is entitled to notice thereof, an opportunity to appear personally with respect thereto and to appeal therefrom. From this it follows that the appellant's argument on this phase of the case must rest upon two propositions: First, that the letter of March 21, 1945, was in effect a request by the appellant to have his classification reopened and considered anew and not, as might appear from its face, merely a belated attempt to appeal the classification of I–A–O made on February 1, 1945; and second, that the local board in response to that letter did in fact reopen the appellant's classification and classify anew, although after reopening it classified the appellant anew in the same class in which he had previously been put.

---

Anew. (a) The local board may reopen and consider anew the classification of a registrant (1) upon the written request of the registrant, * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification; * * * provided, * * * the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction (Form 150) * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control.

\* \* \* \* \* \* \* \*

"626.3 Refusal to Reopen and Consider Anew Registrant's Classification. When the registrant, * * * files with the local board a written request to reopen and consider anew the registrant's classification and the local board is of the opinion that the information accompanying such request fails to present any facts in addition to those considered when the registrant was classified or, even if new facts are presented, the local board is of the opinion that such facts, if true, would not justify a change in such registrant's classification, it shall not reopen the registrant's classification. In such a case, the local board, by letter, should advise the person filing the request that the information submitted does not warrant the reopening of the registrant's classification and should place a copy of the letter in the registrant's file. No other record of the receipt of such a request and the action taken thereon is required.

"Classification Anew

"626.11 When Classification Reopened, it Shall be Considered Anew. When the local board reopens the registrant's classification, it shall consider the new information which it has received and shall again classify the registrant in the same manner as if he had never before been classified. Such classification shall be and have the effect of a new and original classification even though the registrant is again placed in the class that he was in before his classification was reopened.

"626.12 Notice of Action When Classification Considered Anew. When the local board reopens the registrant's classification, it, as soon as practicable after it again classifies the registrant, shall mail notice thereof on the Notice of Classification (Form 57) to the registrant. * * *

"626.13 Right of Appeal Following Reopening of Classification. Each such classification shall be followed by the same right of appearance before the local board and the same right of appeal as in the case of an original classification.

"626.14 Induction Stayed When Classification Reopened. No registrant shall be ordered to report for induction and no Order to Report for Induction (Form 150) shall be effective during the period when the local board is considering the registrant's classification anew, commencing with the day when such classification is reopened."

For the purposes of this appeal we may concede the first proposition because even if the letter be construed as a request for reopening and new consideration, it does not appear that the local board acceded to that request and in fact reopened.

The appellant contends that it conclusively appears that the local board granted his request to reopen and then proceeded to classify him anew because the local board admittedly wrote him no letter as provided in Par. 626.3, supra, to inform him that his request for reopening had been denied, and further because on April 5, 1945, it minuted action "1-A-O continued" which he says clearly indicates that a new classification was made. We do not agree.

■ In the regulations a careful distinction is drawn between the mandatory and the precatory. This is apparent from the portions of Part 626 thereof quoted above. Thus the use of "should" in the provision of Part 626.3, which calls for a letter informing a registrant that his request to reopen has been denied, indicates that such a letter is not required but only suggested or advised. From this it follows that absence of such a letter does not indicate that favorable action has been taken by a local board on an application to reopen a classification and consider it anew.

■ Nor do we attach significance to the notation "I-A-O continued" of April 5, 1945, as indicating a new classification. We find no authorization in the regulations for the use of the word "continued" with a minute of local board action. Thus if used it means only what the local board using it intended to have it mean, and the only evidence in the record is that it was used by the local board whose actions are here in question to indicate only that it had received and read the appellant's letter of March 21, 1945, not that it had acted favorably on the request therein contained. And collateral support for this conclusion is found in the fact that the local board gave the appellant no notice of classification after its action of April 5, 1945. Since it appears that on every previous occasion the board had punctiliously complied with the provision requiring notice of classification, we can hardly assume, if it had reclassified on April 5, 1945, that it would then neglect so important a provision. Furthermore it appears that the local board had used the word "continued" with respect to a classification before (October 25, 1943) at which time concededly it made no new

classification but only declined to change one previously made. From all this we conclude that even though the local board treated the above letter as a request to reopen and consider the appellant's classification anew, it did not grant that request and reopen, but instead denied the request, and from this it follows that no new classification was made after February 1, 1945, and hence that no right of appeal or to appear personally has been denied the appellant.

This brings us to the appellant's second contention—his contention that he is entitled to a new trial because the court below refused to permit the jury to consider whether or not the local board had acted arbitrarily, capriciously and contrary to law in refusing to change his classification from I.A.O. to IV-E.

■ Estep v. United States (Smith v. United States, 66 S.Ct. 423) establishes that a registrant, having exhausted his administrative remedies, may have judicial review of his classification in a prosecution under § 11 of the Selective Training and Service Act of 1940 when he has reported for induction and been finally accepted for military service, but has refused to submit to induction. And we concede that the appellant, like Estep and Smith, pursued his administrative remedies to the end and did all that he could have done short of actually taking the step from civilian into military life. Thus he is within the rule of the above cited cases rather than within the rule of Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305. But it does not follow as a necessary consequence from this that the appellant is entitled to a new trial.

■ As we read the opinion in the Estep and Smith cases there are two general grounds, other than direct violation of the statute itself or of some valid administrative regulation promulgated thereunder, upon which a classification made by a local board may be challenged in prosecutions of this sort. It may be challenged on the ground that it was based upon some bias or prejudice against the registrant, or it may be challenged on the ground that there is no basis in fact to support it. Since in the case at bar it is not contended that the local board in making any classification of the appellant was ever moved by animosity for him personally or for conscientious objectors generally, the only question is whether there is factual support for the lo-

cal board's conclusion not to accede to the appellant's ultimate desire to be classified in IV–E instead of in I.A.O. We find such support in facts which cannot be disputed.

As already appears the appellant did not originally assert any conscientious objection to war. His successive assertions of such objections came only as induction impended, and the reasons he gave to his local board in support thereof are inconsistent.

In his letter to the local board of October 21, 1943, with which he enclosed his Special Form for Conscientious Objector (D. S.S. Form 47), he wrote that he was a conscientious objector to war and could not, with his religious beliefs, "kill a human or in any way assist in such action, and therefore conscientiously object to combatant service in the armed forces." Then in his letter of March 21, 1945, he wrote "At the time I first stated my objection I was willing to be put into classification 1–A–O. Although I wanted to be a complete C.O. at that time, I was forced into a position of compromise because of having several dependents, namely, a wife and two children, that the government would give me no allotment for if I chose that course." In his next letter, however, that of April 7, 1945, he wrote "At the beginning of the war I was in the position of a partial objector, but as my classification was 3A because of dependents there was no need to register this until I was changed to 1–A." Then he went on to describe in detail his gradual adoption of the view that participation in war in any form was morally wrong saying that at the time he left his employment in defense work in New York in December 1944 "A time for redefinition had come because I was arriving at the belief that if I were going to be an objector I must be a complete one. A half objector, or IAO, is no longer a logically tenable position for me." But later on in this same letter he said "My original application for I–A–O status instead of 4E was a compromise" to his wife's "ideas." [4]

Furthermore all of his letters to the local board contained requests for deferment on occupational grounds as well as requests for classification as a conscientious objector and in the last one (April 7, 1945) there are clear indications that the appellant had a strong antipathy to military discipline. In it he wrote "I know I could not endure military direction or authority." "It was insane for me to think I could psychologically stand military direction, or even wear a uniform. As an artist I hate uniformity and cannot stand any conformity that hampers individual expression." And he concluded this letter with a paragraph: "My ideals about the war will be satisfied only by a 4E classification, though the system of the U. S. of grouping objectors in a 'C.P.S. Camp' will prove psychologically almost as bad in this case due to personal eccentricities. 4F is the only fit psychologically. I am an artist and no state of existence would be bearable for me wherein my whole reason for existence is bottled up."

█ It may be possible that from the foregoing reasonable men could conclude that the draft board erred in refusing the appellant's final wish to be classified in IV–E. This, however, is not the issue in cases of this sort. In the Estep and Smith cases supra, the Supreme Court said that the statutory provision making decisions of the local boards in matters of classification "final" means "that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant." We are convinced that there is such solid basis in the record for the local board's action as to preclude a reasonable jury from finding that the local board acted arbitrarily or capriciously or without basis in fact for the final classification it gave.

█ There is nothing whatever in the record to indicate that the local board ignored the appellant's letters. Thus we must assume and the jury in reason could only find that it had read them. Dereliction of duty on the part of a governmental agency is not to be guessed at but must be indicated by some evidence. And on the evidence contained in the appellant's letters as detailed above we cannot see how reasonable men could possibly conclude that the local board had no factual foundation for its decision to retain the appellant in Class I–A–O, the classification he originally re-

---

4 In the narrative statement of the evidence it appears that the appellant testified at the trial below "that when he filed his questionnaire on December 4, 1940 he was not a conscientious objector."

quested, instead of acceding to his final wish and giving him IV–E.

The timing of the appellant's letters with respect to the local board's actions, the indications in the letters that the appellant primarily wanted to remain at large as a civilian and that he preferred confinement in a camp for conscientious objectors only to the discipline and restrictions, if not the hazards, of military service, and the inconsistent reasons given for his alleged belief, so clearly indicate the insincerity of his conscientious objection to war in any form that we cannot see how reasonable men could conclude that the action of the local board complained of was groundless. From this it follows that there is no evidence in the record to warrant submission to the jury of the issue tendered by the appellant and the only one available to him under the rule of the Estep and Smith cases. Weightman v. United States, 142 F.2d 188, 192. And this situation is not affected by the refusal of the court below to admit in evidence the report of the hearings officer who sat in March 1944 on the appellant's claim for a I–A–O classification. The question before the hearings officer at that time was with respect to the appellant's right to a I–A–O instead of a I–A classification. We cannot see how his report on that issue could have any bearing on the issue whether a year later the local board had any evidence to support its decision not to change the appellant from I–A–O to IV–E and none is suggested. No other evidence offered by the defendant was excluded.

The judgment of the District Court is affirmed.