# SIMMONS *v.* UNITED STATES.

No. 251.  Argued February 2, 1955.—Decided March 14, 1955.

*Hayden C. Covington* argued the cause and filed a brief for petitioner.

*Robert W. Ginnane* argued the cause for the United States. With him on the brief were *Solicitor General Sobeloff, Assistant Attorney General Olney, Beatrice Rosenberg* and *Carl H. Imlay.*

MR. JUSTICE CLARK delivered the opinion of the Court.

This case presents another question concerning the processing of conscientious objector claims under the Universal Military Training and Service Act. Petitioner contends that the failure of the Department of Justice to furnish him with a fair résumé of all adverse information in the Federal Bureau of Investigation report deprived him of the "hearing" provided by § 6 (j) of the Act, 62 Stat. 612, as amended, 50 U. S. C. App. § 456 (j), and thereby invalidated his I–A classification. In the circumstances of this case, we conclude that a fair résumé, as contemplated in *United States* v. *Nugent,* 346 U. S. 1 (1953), was not furnished petitioner, and that this deprived him of a fair hearing within the terms of the Act.

Petitioner registered under the selective service laws in 1948. He was then employed as a chauffeur at the Great Lakes Naval Training Center, having had 8 years of grade school and 2½ years of high school. At that time, he did not claim to be a minister or a conscientious objector, but stated that he believed his classification

should be I–A. The local Board so classified him. In 1949, petitioner was married, and on June 4, 1951, he was given a dependency deferment, which was terminated on October 22, 1951. Within a week of his restoration to I–A, petitioner filed the special form for conscientious objectors, claiming exemption from combatant and non-combatant service. In this and in subsequent statements to the selective service authorities, petitioner revealed that he had first been contacted by a member of the Jehovah's Witnesses in November 1949; that he had started a Bible study course at that time and had progressed gradually toward the status of minister; that he had become an unordained minister in December 1950, and an ordained minister in October 1951; that he preached from house to house and on the streets, giving public expression to his conscientious objections to war; that the demands of his "ministry" and the commands of the Bible, admonishing him not to kill and to follow God rather than men, precluded his participation in the military; and that he would not use force "[u]nless it be under the supervision of Jehovah God." After a personal appearance, in which petitioner sought exemption as a minister rather than as a conscientious objector, the local Board continued him in I–A. Petitioner filed an appeal. The Appeal Board tentatively found against him, and referred the case to the Department of Justice.

Following an investigation by the Federal Bureau of Investigation, petitioner was notified to appear for a hearing. No copy of the notice appears in the record, but it appears that the form sent to registrants during the period in question stated that the hearing officer would advise the registrant "as to the general nature and character" of adverse evidence in the FBI report if he requested such information "at any time after receipt by him of the notice of hearing and before the date

set for the hearing."[1]   There is no evidence that petitioner made such a request prior to the hearing.   He did, however, make a request at the hearing.   According to petitioner's uncontradicted testimony, the hearing officer told him that the FBI report disclosed that he had been hanging around poolrooms, and the hearing officer asked him if he did that now.   Petitioner replied that he did not, and asked what else was in the report.   The hearing officer changed the subject.   He subsequently asked petitioner's wife how she was feeling and how petitioner was treating her.   Her reply was "fine."   The hearing officer reported that petitioner impressed him as sincere, but recommended that he be classified I–A because his religious activities coincided with pressure from the Draft Board.

In its report to the Appeal Board, the Department of Justice adopted the hearing officer's recommendation, relying on the timing of petitioner's religious activities and "his abusiveness and the exercise of physical violence towards his wife."[2]   The latter reason rested on data presumably gathered by the FBI.   According to the Depart-

---

[1] The form notice appears as an appendix to the Government's brief, p. 55.   The pertinent paragraph follows:

"2. Upon request therefor by the registrant at any time after receipt by him of the notice of hearing and before the date set for the hearing, the hearing officer will advise the registrant as to the general nature and character of any evidence in his possession which is unfavorable to, and tends to defeat, the claim of the registrant such request being granted to enable the registrant more fully to prepare to answer and refute at the hearing such unfavorable evidence."

[2] The complete text of the report is as follows:

"Registrant is twenty-five years of age, married, born in Illinois and has completed approximately two years of high school.   At the present time he is employed as a chauffeur.   He was first contacted by a member of the Jehovah's Witnesses Sect in November 1949, although the exact date of membership is not reflected.

"The registrant believes in a Supreme Being and describes the

ment's report, police records showed that petitioner was arrested and fined in May 1950 for hitting his wife; that the police were called upon to settle a "hot argument" in June 1950; and that petitioner's wife claimed in January

nature of his belief by citing various parts of the Scriptures, in part, as follows:

" 'Romans 13:1—. . . that Jehovah God and Christ Jesus are the higher powers, and I recognize them as the supreme powers. Peter at Acts 5:29 admonishing all footstep followers of Christ Jesus that "We must obey God rather than men." Also Paul at 2 Cor. 4:4. . . Satan the Devil is the God of this system of things. Showing that we show (sic) obey the Creator rather than the Creation of God. Jehovah God in one of his Ten Commandments at Ex. 20:13 "Thou shall not kill." '

"Registrant relates that in November 1949, at the suggestion of one Clarence Howze, he started a Bible book study and as he progressed wanted more and more to become a minister of truth. At the present time he is receiving training from the Watchtower Bible and Tract Society. As to the question regarding use of force he states 'None whatsoever. Unless it be under the supervision of Jehovah God.' He claims to engage in the work of his religion by preaching from house to house and on the streets.

"At his present place of employment he has been seen reading the Bible during lunch hour and discussing same with a few co-workers. References, all of whom are members of the same sect, believe registrant is sincere, as do his neighbors. A confidential informant, of known reliability, reports that during the last seven or eight months registrant was actively engaged in distributing pamphlets; that prior to that time registrant was personally known to him as a rather heavy drinker and crap shooter in and around local taverns and pool halls. This informant believes registrant is now sincere. Registrant states he has changed his ways and now prays many times during the day. His wife also states he has changed. It is to be noted that registrant is reported to have had a very poor home life.

"Police records reflect that registrant was arrested May 29, 1950 on a complaint by his wife that he pulled her out of a car and hit her in the face—fined $13.60; on June 12, 1950 police were called to settle a 'hot argument' and on January 6, 1952, wife claimed registrant was abusive. Police settled last two matters so no charges were filed.

"The file also reflects that registrant was mailed his questionnaire

402

1952 that he was "abusive" towards her. Also narrated in the report, although not specifically relied on in making the recommendation, is the statement of a "confidential informant" that prior to his recent religious activity petitioner had been "a rather heavy drinker and crap shooter in and around local taverns and pool halls." [3] Petitioner was continued in I–A by the Appeal Board. He refused to submit to induction and this prosecution followed. On trial, petitioner claimed that he had not been afforded a fair summary of the FBI report and secured the issuance of a subpoena *duces tecum* requiring production of the

---

on December 6, 1948 and did not sign that part (series XIV) reserved for a conscientious objection. He was classified I–A on December 23, 1948 and married his present wife on March 5, 1949.

"The Hearing Officer reports registrant impressed him as sincere but notes that his religious activities are coincident with pressing draft activities by officials and, therefore, recommends a I–A classification.

"From the available information it appears that registrant had little, if any, religious training prior to November 1949 and it was not until after his 3–A classification was changed to I–A that he evidenced any conscientious objection. From the time he first attended a Bible study class until approximately October 1951, registrant had a little less than two years of Jehovah's Witness religious training. In addition to the fact that his religious activities coincide with pressing induction possibilities, registrant's absorption and sincerity as to his newly found religion is rendered more questionable by his abusiveness and the exercise of physical violence towards his wife. In this connection police records reflect a complaint by his wife as late as January 6, 1952.

"After consideration of the entire file and record, the Department of Justice finds that the registrant's objections to combatant and noncombatant service are not sustained. It is, therefore, recommended to your Board that registrant's claim for exemption from both combatant and noncombatant training and service be not sustained."

[3] This informant had also stated that petitioner had changed his ways and now seemed sincere. While the statement as a whole may therefore be favorable to petitioner's claim, the disclosure of petitioner's gambling and drinking activities was certainly adverse.

original report. On motion of the Government, and over objection of petitioner, the subpoena was quashed. Thereafter petitioner was convicted, and the Court of Appeals for the Seventh Circuit affirmed, 213 F. 2d 901.

Section 6 (j) of the Act provides that "[t]he Department of Justice, after appropriate inquiry, shall hold a hearing with respect to the character and good faith" of the claimed conscientious objections. In *United States* v. *Nugent, supra,* we held that this "hearing" did not entail disclosure of the secret FBI reports. In reaching this conclusion, however, we relied on the availability to the registrant of a fair résumé of these reports:

> ". . . We think the Department of Justice satisfies its duties under § 6 (j) when it accords a fair opportunity to the registrant to speak his piece before an impartial hearing officer; when it permits him to produce all relevant evidence in his own behalf and at the same time supplies him with a fair résumé of any adverse evidence in the investigator's report." 346 U. S., at 6.

We did not view this provision for a fair summary as a matter of grace within the Department's discretion, but rather as an essential element in the processing of conscientious objector claims. *United States* v. *Nugent* represented a balancing between the demands of an effective system for mobilizing the Nation's manpower in times of crisis and the demands of fairness toward the individual registrant. We permitted the FBI report to remain secret because we were of the view that other safeguards in the proceeding, particularly the furnishing of a fair résumé, maintained the basic elements of fair play. If the balance struck in *Nugent* is to be preserved, the registrant must receive the fair summary to which he is entitled. The Department expressly recognizes this and, since *Nugent,* has furnished each registrant, at the time

he is notified of the hearing, with a written résumé of the information developed in the FBI report, a copy of which is also placed in his file for use by the Appeal Board.[4]

The Government assumes that the Department of Justice is required to furnish the registrant with a fair résumé upon request. But it contends that petitioner failed to make a timely request for the summary; that the remarks of the hearing officer gave him adequate notice of the unfavorable evidence in the FBI report; and, finally, that the lack of notice, if there was such, was harmless.

As to the request for the summary, the Government must rely on a document which is not in the record and which was not open to attack or explanation in the trial court. Indeed, had the Government produced the form notice in the lower courts, petitioner might have been able to show that he had made a request prior to the hearing. But leaving these difficulties aside, the notice reproduced in the Government's brief does not, in our view, convey clearly to the layman the idea that he must make a request for the résumé prior to the hearing or forever waive his rights in this respect.[5] There is nothing in either the statute or the regulations authorizing such a waiver. And the discussion of this point in *Nugent,* 346 U. S., at 6, n. 10, was not directed at the time or method of requesting the résumé, but only at its availability.

That petitioner never received a fair résumé of the unfavorable evidence gleaned by the FBI seems hardly arguable on this record. As to his alleged gambling and drinking, the hearing officer merely told petitioner that he was reported to have been hanging around pool rooms. And

---

[4] This procedure was not in effect at the time petitioner was notified to appear for his hearing.

[5] Registrants are not to be treated as though they were engaged in formal litigation assisted by counsel. *United States ex rel. Berman* v. *Craig,* 207 F. 2d 888; *Smith* v. *United States,* 157 F. 2d 176.

as to the reported incidents of violence and abuse towards his wife, the hearing officer, in an apparent aside, advanced only the general query to petitioner's wife, asking her how petitioner was treating her now. A fair résumé is one which will permit the registrant to defend against the adverse evidence—to explain it, rebut it, or otherwise detract from its damaging force. The remarks of the hearing officer at most amounted to vague hints, and these apparently failed to alert petitioner to the dangers ahead. Certainly they afforded him no fair notice of the adverse charges in the report. The Congress, in providing for a hearing, did not intend for it to be conducted on the level of a game of blindman's buff. The summary was inadequate and the hearing in the Department was therefore lacking in basic fairness.

The Government's argument that no prejudice was shown and none resulted can be readily disposed of. Relying on a case concerned with constitutional restrictions on the States in regulating public utilities, *Market Street Railway Co.* v. *Railroad Comm'n of California,* 324 U. S. 548, it contends that the petitioner must specifically show prejudice in order to question the fairness of the résumé. The holding of the *Market Street Railway* case was that the Due Process Clause was "not to be trivialized by formal objections that have no substantial bearing on the ultimate rights of parties," that the Commission could make "incidental reference" to the railroad's own reports to verify its judgment, formulated on the basis of the entire record, without introducing the reports in evidence. *Id.,* at 562. We are not now dealing with constitutional limitations. We are endeavoring to apply a procedure, set forth by Congress, in accordance with the statutory plan and the concepts of basic fairness which underlie all our legislation. We have held that to meet its duty under § 6 (j) the Department must furnish the registrant with a fair résumé of the FBI report. It is clear in the

circumstances of this case that it has failed to do so, and that petitioner has thereby been deprived of an opportunity to answer the charges against him. This is not an incidental infringement of technical rights. Petitioner has been deprived of the fair hearing required by the Act, a fundamental safeguard, and he need not specify the precise manner in which he would have used this right—and how such use would have aided his cause—in order to complain of the deprivation.

It being evident from the record before the Court that the Department of Justice has failed to provide petitioner with a fair résumé of the FBI report, it is unnecessary for us to pass on petitioner's further contention that the trial court erred in quashing his subpoena *duces tecum*.

*Reversed.*

MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS, adhering to their dissent in *Nugent* v. *United States*, 346 U. S. 1, 13, join in this opinion and judgment.

MR. JUSTICE REED would affirm on the ground that, as no summary was requested, it was not necessary to furnish more to the registrant than was given by the hearing officer. See *Gonzales* v. *United States*, decided today, *post*, p. 407.

MR. JUSTICE MINTON, dissenting.

Even if the Board has denied petitioner a fair résumé of all adverse information in the FBI reports, it does not appear to have been done arbitrarily or capriciously, and the judgment of the Board in doing so was allowable "even if erroneous." It takes more than disagreement with the Board to destroy jurisdiction, the only condition upon which courts may interfere. I would affirm.