**UNITED STATES of America**

v.

**John Thomas BUDNER.**

**Crim. No. 12434.**

United States District Court
M. D. Pennsylvania.
Aug. 25, 1955.

J. Julius Levy, U. S. Atty., Stephen A. Teller, Asst. U. S. Atty., Scranton, Pa., for plaintiff.

Hayden C. Covington, Brooklyn, N. Y., Conrad A. Falvello, Anthony Falvello, Hazleton, Pa., for defendant.

FOLLMER, District Judge.

In support of his motion for judgment of acquittal this defendant assigned a number of reasons which may briefly be summarized as constituting a denial of due process in connection with the FBI report and summary thereof re-sulting in a refusal of conscientious objector status.

In his original questionnaire defendant did not sign Series XIV certifying that he was a conscientious objector and made no request for a special classification. Accordingly, on July 14, 1949, he was classified I–A by his Local Board. He was married June 29, 1949, and on July 28, 1949, the Local Board changed his classification to III–A, which was the classification for married men and which deferred him from military service and training at that time. On October 4, 1951, he was reclassified by his Local Board to Class I–A, of which action he was notified the following day. On October 10, 1951, defendant wrote to the Local Board advising that he had become an ordained minister; that his interest in Jehovah's Witnesses began in 1947 (later changed to 1948) when he met the girl who later became his wife, and that he was baptized in 1948 (later changed to 1949). In this letter he also outlined the course he had taken in studying the Bible and in preparing for the ministry, and also advised that in 1950 he was appointed Territory Servant by the Watchtower Bible and Tract Society.

On October 22, 1951, defendant filed with the Local Board Special Form for Conscientious Objector (SSS Form No. 150) in which he signed Series I(B) showing that he was conscientiously opposed to participation in both combatant and noncombatant military service. He was given a hearing before the Local Board on October 25, 1951, after which he was again continued in Class I–A. Defendant was not immediately notified of this classification and on November 13, 1951, he filed with the Local Board a petition signed by sixty different persons showing that they recognized him as a minister.

On December 10, 1951, defendant filed with the Local Board a letter of appeal dated December 7, 1951. On December 17, 1951, the Local Board forwarded the file to the Appeal Board. The Appeal Board returned the file to the Local

Board on January 30, 1952, with the request that defendant be reissued the Special Form for Conscientious Objector. The new form was forwarded to defendant and he was also requested to fill out, for the second time, the new Selective Service Classification Questionnaire (SSS Form No. 100).

Defendant executed and filed with the Local Board Special Form for Conscientious Objector (SSS Form No. 150) on February 6, 1952, and Classification Questionnaire (SSS Form No. 100) on February 11, 1952. In Series VI of the Questionnaire, which was left blank on the original Questionnaire, defendant set forth that he was an ordained minister of Jehovah's Witnesses, the date of his ordination being November 13, 1949. He also signed Series XIV indicating that he was a conscientious objector and requested Special Form therefor (SSS Form No. 150). He requested classification of a duly ordained minister of religion, Class IV–D. On the Special Form for Conscientious Objector defendant signed Series I(A), striking out, however, all of the printed statement except the portion reading, "I am, by reason of my religious training and belief, conscientiously opposed to participation in war in any form." Defendant later wrote the Local Board explaining why he had deleted a portion of Series I(A).

On February 21, 1952, the Local Board again classified defendant in Class I–A. Defendant was notified of this action on February 27, 1952, and on March 7, 1952, he filed Notice of Appeal with the Local Board. The file was forwarded by the Local Board to the Appeal Board on March 17, 1952, from whence it was forwarded to the Department of Justice for investigation.

The FBI investigated and forwarded its report to the Department of Justice by whom the report and complete file was forwarded to the Hearing Officer.

The Hearing Officer mailed to defendant notice to appear before him on December 26, 1952. This notice had attached to it a set of instructions which failed to inform defendant that he had the right to receive a fair summary of any unfavorable evidence appearing against him in the FBI report. At the trial the Hearing Officer testified that his recollection was that there was no discussion about the FBI report at the hearing.

Following the hearing the Hearing Officer forwarded his report and recommendation concerning defendant's classification to the Department of Justice.

On March 31, 1953, the Special Assistant to the Attorney General wrote to the Appeal Board recommending that defendant be denied his conscientious objector classification. This letter reviewed the content of the several questionnaires and claim for conscientious objector status and then stated, inter alia:

"* * * The file reveals that registrant was not a conscientious objector when he filed his first SSS Form No. 100 in September, 1948. He did not maintain this view until October, 1951, when he was deprived of a III–A classification.

"The investigation was not too favorable. Neighbors and associates are unable to comment on registrant's sincerity and good faith. He was formerly an ardent Presbyterian, but these informants believe registrant's wife and her family influenced him to accept the Jehovah's Witnesses principles. Former and present employments were satisfactory. Fellow employees cannot testify to his good faith. One employer remarked that registrant did not 'appear so holy' to him. He is known to swear when he becomes angry. His mother and an uncle do not believe registrant is honest or conscientious in his objection to participation in the armed forces. Moreover, registrant advised his mother only two weeks prior to the time she was interviewed that he had to do what his wife and her parents wished him to do in order

to maintain his home. Over a period of years registrant has made known his willingness to serve in the army according to this informant. References, who are Jehovah's Witnesses, attest to registrant's good faith and active church membership.

"Registrant appeared with several witnesses for his interview. He told the Hearing Officer that he devoted his evening hours and weekends to the church. He stated that as a 'minister' he is opposed to war and should have a IV–D classification. The Federal Bureau of Investigation report did not furnish any convincing evidence of sincerity or good faith. The Hearing Officer specially noted remarks on this point by members of registrant's own family. The witnesses attested to his 'ministerial' status. In view of all the evidence and as a result of his personal observation and interrogation, the Hearing Officer concluded that registrant was not conscientiously opposed to combatant and noncombatant duty by reason of religious training and belief. He, therefore, recommended a I–A classification."

On June 4, 1953, defendant was advised of the action of the Appeal Board. Shortly thereafter defendant wrote to the Local Board requesting a reopening of his classification and an interview with the Board. His request was granted and he appeared before the Local Board on August 13, 1953, at which time the Board decided that the evidence presented did not warrant a reopening of the classification. He was in due course ordered to report for induction. He did report and after having been examined and found physically and mentally acceptable, was ordered to submit to induction, and refused. The prosecution followed.

At the trial defendant categorically denied all of the statements in the Department letter which were in any way derogatory to his character or his claim for conscientious objector status. He stated that he had no opportunity to answer any of the unfavorable evidence appearing in the FBI report and that the first time he ever saw the reference to the same was the day before the trial. Defendant further testified that he knew his case was being investigated by the FBI; that he felt the only reason for such investigation would be to ascertain from local people if he was "associated and active in the church." He stated that he had not inquired of the Hearing Officer concerning the same, and had not requested information in relation thereto. Then occurred this colloquy:

"Q. * * * I am asking you whether you were interested in knowing what was said to the FBI?

"A. No, sir.

"Q. You were not interested in knowing?

"A. No, sir.

"The Court: Then it did not make any difference to you whether it was good or bad, is that what you mean by that?

"The Witness: It did make a difference whether it was good.

"The Court: You did not care whether it was bad?

"The Witness: I did care whether it was bad.

"The Court: What do you mean when you say you did not ask because you did not care?

"The Witness: Naturally I was interested in my case or what was said in my behalf, but as I stated before, if anything was said against me, well, then I knew it would be false because as I said before, there was nothing that I was ashamed of.

"The Court: You were satisfied there was nothing in your record that could be adverse?

"The Witness: That is right.

"The Court: So you did not care whether you saw it or not, is that what you mean?

"The Witness: That is right."

At the trial counsel for defendant agreed that the sole question before the Court was the refusal to grant defendant conscientious objector status.

The issue here is a very narrow one. Regardless of any opinion the Court may have on the bona fides of defendant's claim,[1] the cold fact remains he did not receive a copy of the Justice Department's recommendation and obviously did not have a reasonable opportunity to file a reply thereto.

Since the trial of this case the Supreme Court has again spoken. In Simmons v. United States of America, 348 U.S. 397, 75 S.Ct. 397, 400, the Court stated, inter alia:

"Section 6(j) of the Act [50 U.S.C.A.Appendix, § 456(j)] provides that '(t)he Department of Justice, after appropriate inquiry, shall hold a hearing with respect to the character and good faith' of the claimed conscientious objections. In United States v. Nugent, supra, we held that this 'hearing' did not entail disclosure of the secret FBI reports. In reaching this conclusion, however, we relied on the availability to the registrant of a fair résumé of these reports:

"'* * * We think the Department of Justice satisfies its duties under § 6(j) when it accords a fair opportunity to the registrant to speak his piece before an impartial hearing officer; when it permits him to produce all relevant evidence in his own behalf and at the same time supplies him with a fair résumé of any adverse evidence in the investi-

gator's report.' 346 U.S. at page 6, 73 S.Ct. at page 994.

"We did not view this provision for a fair summary as a matter of grace within the Department's discretion, but rather as an essential element in the processing of conscientious objector claims."

As to defendant's failure to request the summary, the Court said, 348 U.S. at page 404, 75 S.Ct. at page 401, "There is nothing in either the statute or the regulations authorizing such a waiver."

In Gonzales v. United States of America, 348 U.S. 407, 75 S.Ct. 409, 412, the Court said, inter alia:

"* * * we believe it also to be implicit in the Act and Regulations —viewed against our underlying concepts of procedural regularity and basic fair play—that a copy of the recommendation of the Department be furnished the registrant at the time it is forwarded to the Appeal Board, and that he be afforded an opportunity to reply."

In conclusion, the Court said:

"We hold that the overall procedures set up in the statute and regulations, designed to be 'fair and just' in their operation, 62 Stat. 605, 50 U.S.C.App. § 451(c), 50 U.S.C.A.Appendix, § 451(c), require that the registrant receive a copy of the Justice Department's recommendation and be given a reasonable opportunity to file a reply thereto."

These requirements were not met in this case. Accordingly, defendant's motion for acquittal will be granted.

[1] Note the fact that in his original questionnaire he made no request of any sort for special classification; the increasing tempo of his requests as his induction became imminent; finally, he was not interested in knowing what information was secured by the FBI because he "didn't think anything could have been said against" him.