UNITED STATES of America,
Plaintiff,

v.

Richard Robert MONROE, Defendant.

No. 25626–CD Cr.

United States District Court
S. D. California,
Central Division.

April 16, 1957.

Laughlin E. Waters, U. S. Atty., for Southern District of California, by Louis Lee Abbott and John K. Duncan, Asst. U. S. Attys., Los Angeles, Cal., for U. S.

Edgar G. Wenzlaff, Los Angeles, Cal., for defendant.

TOLIN, District Judge.

Defendant is charged with wilfully refusing to submit to induction into the Armed Forces of the United States in violation of the Universal Military Training and Service Act, 50 U.S.C.A. Appendix, § 462(a). His sole defense is that the induction notice is void by reason of the failure of the local board to reopen his classification and determine whether he was entitled to exemption from service as a conscientious objector.

It is now well recognized that Congress could constitutionally compel every person to render military service, regardless of his religious or moral objections to the use of force.[1] In modern times the lawmakers have specifically deferred from military service any person who, by reason of religious training and belief, is conscientiously opposed to war in any form.[2] Thus, the full service which the sovereign may command has, in certain circumstances, not been required. Handling of cases involving claims to deferment on grounds of conscientious objection often requires a delicate resolution of the seeming conflict between religious principles and civil duties.[3]

The facts are not in dispute. Defendant first became subject to the Selective Service System on January 21, 1952, when he registered with Local Board No. 86, Burbank, California. On April 20, 1954, registrant was re-classified I-A and immediately notified of his new status. No question is here raised as to the basis in fact of that classification. In the latter part of 1955 registrant became associated with the religious sect known as Jehovah's Witnesses, but failed to notify the draft board until the events hereafter related of this or any other fact which might change his status.

On July 17, 1956, the local board, unaware of registrant's newly acquired religious convictions, mailed to registrant an Order to Report for Induction (SSS Form 252) on August 1, 1956. At that time registrant's file was barren of any suggestion that he claimed to be a conscientious objector. Two days before the scheduled induction, on July 30, 1956, registrant appeared at the offices of the local board and orally requested from a clerk an SSS Form 150 (Special Form for Conscientious Objector). He did not then request a reopening of his classification nor claim an exemption from military service, but

1. See the discussion in George v. United States, 9 Cir., 1952, 196 F.2d 445, and cases cited therein.

2. 50 U.S.C.A.Appendix, § 456(j).

3. United States v. Simmons, 7 Cir., 1954, 213 F.2d 901, reversed on other grounds, 1955, 348 U.S. 397, 75 S.Ct. 397, 99 L. Ed. 453; United States v. Tetsuo Izumihara, D.C.Hawaii 1954, 120 F.Supp. 36.

merely indicated that he would return the completed Form on the following morning.

At the time registrant procured the SSS Form 150 he had not decided to request deferment as a conscientious objector, but intended to take more time to make up his mind whether he "was doing the right thing."[4] As a result of this procrastination, no further representations that registrant might assert conscientious objections were made to the local board until August 3, 1956, when it received a statement from the Induction Station that two days earlier Monroe had refused to submit to induction, he thereby having committed the offense here charged. On the same day the board received[5] a formal declaration from the registrant stating that he was a conscientious objector and would refuse to be inducted. The completed SSS Form 150 was not received until August 6, 1956,[6] five days after registrant was to be inducted.

The board thereafter took no action in Monroe's case other than to make the required reference[7] which resulted in this prosecution. There is nothing in the law heretofore declared which indicates the appropriateness of any other procedure under these circumstances. The validity of registrant's claim has never been determined by the local board.

■ Unless the board's failure to reopen and consider anew registrant's classification constituted a denial of due process, registrant is guilty as charged. A valid order to report for induction imposed upon Monroe a duty to submit to induction,[8] and his knowing refusal to perform that duty was a violation of the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 462 (a).[9]

4. "Mr. Wenzloff: 'Will you state what you did on the date of July 30th, please?'
\* \* \* \* \*
"Mr. Wenzloff: 'You called there that day, did you, at the Local Board?'
"Monroe: 'Yes, I did.'
\* \* \* \* \*
"Mr. Wenzloff: 'Now, did you do anything within the next five days regarding that matter?'
"Monroe: 'Yes, I mailed a letter to the Board telling them that definitely the form would be returned within the five days.'
"The Court: 'Had you received the form at the time you sent that letter?'
"Monroe: 'Yes, but I found I needed additional time.'
"The Court: 'Why?'
"Monroe: 'I wanted to be sure I was doing the right thing.'
\* \* \* \* \*
"Mr. Duncan: 'Mr. Monroe, you testified that you appeared at the Local Board on July 30, 1956. Is it true that on that time—at that time on that morning you made a statement when you received the Form 150 that you would return it the next morning?'
"Monroe: 'Yes, I did.'
"Mr. Duncan: 'And did you return it the next morning?'
"Monroe: 'No, I did not.'
\* \* \* \* \*

"The Court: 'Did you try to return it the next morning?'
"Monroe: 'No, I did not because, as I stated previously, I found I required more time to complete it.'
"The Court: 'More time to make up your mind?'
"Monroe: 'In a manner of speaking, yes.'"

5. The document, although dated July 31, 1956, by Monroe, was not received in the mail by the board until August 3, 1956.

6. Monroe returned with the Form on Saturday, August 4, 1956, but finding the office closed, left the Form under the door.

7. 32 C.F.R. § 1642.41(a).

8. United States v. Witmer, D.C.M.D.Pa. 1953, 115 F.Supp. 19, affirmed, 3 Cir., 1954, 213 F.2d 95 and 1955, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428.

9. " \* \* \* [A]ny person \* \* \* who \* \* \* shall knowingly fail or neglect or refuse to perform any duty required of him under \* \* \* this title, or rules, regulations, or directions made pursuant to this title \* \* \* shall \* \* \* be punished by imprisonment for not more than five years or a fine of not more than $10,000, or by both \* \* \*."

In evaluating Monroe's claim in this prosecution that the board's failure to reopen was so arbitrary and capricious as to make illegal the outstanding notice of induction, this Court does not sit as a super draft board.[10] Judicial review of board action is severely limited,[11] and our duty is done if we are solicitous that the registrant's treatment by the Selective Service System was in accordance with due process and the Act and regulations which Congress has determined to be in the best national interest.[12]

The exemption granted by Congress is not a matter of right, but of legislative grace.[13] Being a privilege, it may be abandoned by the holder like any other personal privilege.[14] To be effective, claims to the exemption must be interposed in the manner and at the time prescribed by law or regulation.[15]

Selective Service Regulation 1625.2, 32 C.F.R. § 1625.2, provides in pertinent part as follows:

"§ 1625.2 When registrant's classification may be reopened and considered anew. The local board may reopen and consider anew the classification of a registrant (a) upon the written request of a registrant, * * * if such request is accompanied by written information presenting facts * * * which, if true would justify a change in the registrant's classification; * * * provided * * * the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control."

The Regulation sets forth both the manner and the time in which requests for reopening, to merit consideration, must be made. The requirement that claims for reclassification be in writing and accompanied by a written statement of the facts upon which the registrant relies is no more than a reasonable administrative provision to enable the local board to assess fairly the seriousness and substantiality of the registrant's request. Conversely, the insistence upon documentary information relieves the members of the board of the fruitless task of searching each tentative and ambiguous act of a registrant in order to ascertain whether it might not foretell the existence of an inchoate claim to exemption.[16] In order to allow the board a fair opportunity to consider the request, the written information must be submitted sometime before the registrant is scheduled to be inducted. The cut-off date selected for this purpose by the Regulation, the date that the Order to Report for Induction is mailed, is a reasonable part of an orderly administrative process.

10. Witmer v. United States, 1955, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed 428.

11. Witmer v. United States, 1955, 348 U.S. 375, 75 S.Ct. 392; Dickinson v. United States, 1953, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132; Estep v. United States, 1946, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567.

12. United States v. Simmons, 7 Cir., 1954, 213 F.2d 901, reversed on other grounds, 1955, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453.

13. Bradley v. United States, 9 Cir., 1954, 218 F.2d 657, reversed on other grounds, 1955, 348 U.S. 967, 75 S.Ct. 532, 99 L.Ed. 754.

14. United States v. Schoebel, 7 Cir., 1953, 201 F.2d 31.

15. Feurer v. United States, 9 Cir., 1953, 208 F.2d 719.

16. See also Selective Service Regulation 1623.1(b), 32 C.F.R. § 1623.1(b), which provides that "the registrant's classification shall be determined solely on the basis of * * * such * * * written information as may be contained in his file. * * * [O]ral information shall not be considered unless it is summarized in writing and the summary placed in the registrant's file."

The registrant complied with neither requirement laid down by the Regulation. Perhaps the Regulation would suffice to justify the board's inaction upon registrant's request solely on the ground that reclassification was not sought until after the mailing, on July 17, 1956,[17] of the Order to Report for Induction.[18] Whether that be so or not, his failure to file a *written* claim by August 1, 1956, the time of the scheduled *induction itself,* precludes registrant from asserting that he was denied due process of law. Registrant cannot now complain that the egg upon which he sat too long was not hatched. The written information required by law was filed too late, and the mere oral request for an SSS Form 150 was not a foundation which required the board to reopen registrant's classification and cancel his scheduled induction. Even assuming that the members of the board were immediately informed of registrant's appearance at the office,[19] they could not know whether this equivocal act was the first step in an assertion of the claim. At most, the bare procurement of an SSS Form 150 indicated that the registrant was considering a change in his status upon which he might or might not ultimately base a request for reclassification.

Registrant was entitled to Due Process, but he owed reasonable compliance with procedural requirements. There are two sides to every coin. He was denied no procedural right when he submitted no written information which the local board could process.

The proposition that the untimely steps taken by registrant entitled him to a reopening is rejected. Any other conclusion would allow the indefinite avoidance of military service by registrants who visited their board offices on induction eve to secure Selective Service forms which, if filed, might have served as the basis for a reopening.

It follows from the foregoing that the induction notice validly imposed upon registrant a duty to submit to induction. Accordingly, it is the judgment of this Court that defendant, having knowingly refused to perform that duty, is guilty of a wilful violation of the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 462(a).

17. Nothing indicates that Monroe's religious scruples matured after that date, even if that would justify a finding that there had been a change of status resulting from circumstances over which the registrant had no control. Compare United States v. Schoebel, 7 Cir., 1953, 201 F.2d 31 with United States v. Brown, D.C.N.J.1955, 129 F.Supp. 237.

18. See United States v. Schoebel, 7 Cir., 1953, 201 F.2d 31; Lehr v. United States, 5 Cir., 1943, 139 F.2d 919; United States v. Wilson, D.C.W.D.La. 1955, 132 F.Supp. 485; Ex parte Hannig, D.C.N.D.Cal.1952, 106 F.Supp. 715; Ex parte Robert, D.C.N.D.Cal.1943, 49 F.Supp. 131. See also Feurer v. United States, 9 Cir., 1953, 208 F.2d 719; United States v. Smith, D.C.E.D.Ill. 1954, 124 F.Supp. 406, affirmed sub nom. United States v. Hoepker, 7 Cir., 1955, 223 F.2d 921, certiorari denied 350 U. S. 841, 76 S.Ct. 81, 100 L.Ed. 750.

But see United States v. Crawford, D.C.N.D.Cal.1954, 119 F.Supp. 729; United States v. Underwood, D.C.E.D. Pa., 151 F.Supp. 874.

19. There is nothing in the evidence to indicate that this happened. On the contrary, there is evidence defendant merely requested the Form from a clerk.