**UNITED STATES of America,**
**Plaintiff,**

v.

**David Blair CRAFT, Defendant.**

**No. 24427.**

United States Court of Appeals,
Ninth Circuit.

March 20, 1970.

George K. Faler (argued), Seattle, Wash., for appellant.

J. Byron Holcomb (argued), Asst. U. S. Atty., Stan Pitkin, U. S. Atty., Seattle, Wash., for appellee.

Before CARTER and HUFSTEDLER, Circuit Judges, and PECKHAM, District Judge.

PECKHAM, District Judge.*

Appellant was convicted of failing to report for induction. 50 U.S.C. App. § 462. He was sentenced to two years probation on condition that he perform some work in the national interest for that period. On appeal defendant contends that the Selective Service System made several errors which denied him due process of law; he also contends that the trial court made certain errors which necessitate reversal. We disagree and affirm.

### I.

Appellant makes six claims of prejudicial error respecting his processing by the Selective Service System.

■ 1. *Denial of Personal Appearance.* Appellant first argues that he was denied a personal appearance before his local board. However, he did not make a timely request as required by 32 C.F.R. Section 1624.1(a). He wrote a letter to his local board on May 11, 1964 some 13 months after he had been classified 1–A.[1] In this letter defendant

---

* The Honorable Robert F. Peckham, United States District Judge for the Northern District of California sitting by designation.

1. The text of the letter is as follows (Selective Service File, Doc. No. 159) :
"Dear Sirs:

My father wrote and told me that he informed you of an eye and ankle ailment I have. It is true I have these, but I do not think they are sufficient to warrant exclusion from military duty. However, upon registering for the draft I requested a classification as a conscientious objector which was re-

asked for information on the proper method of reasserting his claim to conscientious objector status. To this the board responded, perhaps unsympathetically, by again classifying defendant 1–A on May 12, 1964. Assuming that this letter can be construed as a request for a personal appearance, it is far too late as to the 1963 classification.[2] See United States v. McQueary, 408 F.2d 493 (9th Cir. 1969); United States v. Jones, 384 F.2d 781 (7th Cir. 1967). It is also premature as to the classification of the next day.[3]

■ 2. *Deception Regarding Personal Appearance.* Defendant next argues that he was deceived into believing that he was accorded a personal appearance when he had at most a courtesy interview. This contention arises because in 1965, at the behest of the State Appeal Board, defendant's local board reopened his classification and again classified him 1–A. (See discussion in argument 4, *infra.*) He belatedly informed the local board of his current address and the State Director requested that the time for taking an appeal be enlarged. De-

fendant did appeal on September 14, 1965.[4] For reasons not made clear in the record or by counsel at oral argument, defendant was contacted by Local Board No. 1 in Anchorage, Alaska (where defendant was then residing) on October 27 and informed that he would have a "personal appearance" before that board on November 10. Defendant appeared and discussed his case with them for about 15 minutes. Thereafter this board "reclassified" Craft 1–A and sent his file to the Alaska State Director. When his file was later returned to his home state, Washington, an entry was made to the effect that the proceedings in Alaska had been improper because the Anchorage board was without jurisdiction to classify him. Defendant was never notified of this entry. Because of the foregoing, Craft argues that he was deceived into believing that he had a personal appearance, and therefore did not insist on a bona fide appearance before his local board which he had a right to demand. 32 C.F.R. § 1624.1(a). The short answer to this argument is that defendant's time for requesting his appearance ran out before the alleged de-

fused undoubtedly because of insufficient material being provided on my part supporting my request. I am re-entering a request for this classification at this time and would like to know what arrangements would be necessary or how I should submit my reasons for this request. Is a letter adequate? I would be grateful for any information you could give me on this subject.
Sincerely yours,<br>Dave Craft"

2. Local boards are not to interpret communications from registrants as if they were litigants represented by counsel. Simmons v. United States, 348 U.S. 397, 404 n. 5, 75 S.Ct. 397, 99 L.Ed. 453 (1955); *accord*, United States v. Stafford, 389 F.2d 215, 218 (2nd Cir. 1968); United States v. Burlich, 257 F.Supp. 906, 909 n. 6 (S.D.N.Y.1966).

3. There is no contention that defendant did not receive SSS Form 110 (Notice of Classification) which provides notification of the right to request a personal appearance. Pursuant to the presumption of regularity, *e. g.*, United States v. Hulphers, 421 F.

2d 1291, 9th Cir. December 29, 1969, we assume that the local board complied with 32 C.F.R. Section 1623.4(a) and sent SSS Form 110 upon reclassification. Defendant did not respond with a timely request.

4. The text of the letter is as follows (Selective Service File, Document No. 127):
"Sept. 14, 1965

Local Board No. 19
Room 120 Admiral Bldg.
Bremerton, Washington
Dear Sirs:

My apoligies [sic] for not reporting my last change of address, [sic] I assure you it won't happen again. I see by my returned classifacation [sic] that I am still listed as 1–A. If it is possible I would like to appeal this classifacation, [sic] as my feelings on the matter have not changed. In fact this letter represents my formal protest to this classification. I would sincerly [sic] apreciate [sic] any information you could give me on why my requested 1–O classification was denied. Thank you very much for your consideration.
Sincerely,<br>Dave Craft"

ception occurred. The September 14 letter is not a request for a personal appearance [5] and the Selective Service file reveals no other communications from defendant which could be so construed. By October 27, the earliest date at which defendant could have been "mislead," the time for requesting a personal appearance had certainly expired.[6]

3. *Violation of Local Board Memorandum No. 41.* Defendant contends that the board violated Local Board Memorandum No. 41, and particularly paragraph 3(b), in the processing of his conscientious objector application.[7] While this seems a very desirable manner in which to proceed, the quoted passage was added to the Memorandum in July, 1968, long after the events in the instant case occurred. The version of the Memorandum then in effect was identical to paragraphs 1, 2, 4 and 5 in the current version. Therefore, we need not reach the question of whether violation of the current Memorandum could be adequate to vitiate a conviction.[8]

■ 4. *Failure to Reopen.* Finally, it is urged that the local board failed to reopen defendant's classification as required by order of the State Director on May 17, 1965. 32 C.F.R. § 1625.3(a).

This contention is unfounded. The local board wrote the defendant on May 24 informing him of its intention to reopen his case and requesting that he send them any further information he wished considered. The board also advised him that it intended to consider his case at a meeting on June 8. In fact the board did not meet on June 8 but instead met on July 13 when his case was reopened and he was again classified 1–A. However, the board's communications did not reach defendant until he informed it of his current address through his mother on September 8. (Appellant's Brief at 7; Selective Service File, Doc. Nos. 123, 127.) The fact that defendant was not specifically informed of the July 13 meeting as against the June 8 meeting caused him no prejudice. The fact that no new material was considered at the July 13 meeting was due to defendant's failure to keep the board informed of his current address. This he is obligated to do. 32 C.F.R. § 1641.3.

5. *Other Contentions.* Defendant's arguments based on the alleged failure of the board to meet to order his induction or to authorize the clerk to sign induction orders have been rejected. United States v. Stark, 418 F.2d 901, 9th Cir. November 28, 1969; Rusk v. United States,

---

5. In addition to noticing the appeal, the letter is at most a request for an explanation from the local board. Defendant received such a response on October 15, 1965 (Selective Service File, Document No. 120).

6. Of course if such deception occurred while a registrant was still able to request the appearance, and as a result of it failed to do so, reversal would seem required. See, Bejelis v. United States, 206 F.2d 354, 356 (6th Cir. 1953) ; Niznik v. United States, 173 F.2d 328, 334–336 (6th Cir. 1949) ; Lancaster v. United States, 153 F.2d 718, 720 (1st Cir. 1946) ; *see also*, United States v. Liberato, 109 F. Supp. 588 (W.D.Pa.1953).

7. LOCAL BOARD MEMORANDUM NO. 41.
 SUBJECT: CLAIMS OF CONSCIENTIOUS OBJECTION.
 \* \* \* \* \*
 3. Consideration of C.O. Claims by Local Boards.—

\* \* \* \* \*
 (b) If, upon consideration of this evidence, the local board determines that it cannot grant the 1–A–O or 1–O classification claimed, the local board should invite or request the registrant to meet with it for an interview prior to classification. The primary purpose of the interview will be to develop further facts on which the conscientious objector claim is based, and the sincerity of such claim. This interview does not take the place of the personal appearance which the registrant may request under Section 1624.1, after the classification action. [Reproduced in Sel.Serv.L.Rep. at 2174.]

8. See discussion in Sel.Serv.L.Rep. Practice Manual ¶ 33. *See,* United States v. Stout, 415 F.2d 1190, 4th Cir. September 18, 1969 at Part I (2 Sel.Serv.L.Rep. 3280).

419 F.2d 133, 9th Cir. November 28, 1969; United States v. Doran, 418 F.2d 1226, 9th Cir. November 10, 1969. Defendant's belated assertion on appeal that 32 C.F.R. § 1631.7 (order of call) was violated is foreclosed by United States v. Weersing, 415 F.2d 130 (9th Cir. 1969) (some evidence of irregularity must be adduced *at trial* to overcome the presumption of regularity).

## II.

With respect to conduct of the trial, defendant claims error as to three matters and also makes a short but broad-gauged attack on the entire selective service law.

■ 1. *Improper Reference.* During his examination of the defendant, the Assistant U. S. Attorney referred to defendant's trip to the induction center on May 11, 1965 as an occasion upon which he refused induction. In fact defendant went to the induction center, told personnel there that he claimed conscientious objector status, waited a while and was told to go home. He did not actually refuse induction. However, the fact that he did not actually refuse induction was brought out during the Government's interrogation. Upon review of the record, we conclude that the trial court did not abuse its discretion in permitting the reference. Defendant's presence at the induction center and the proceedings there would tend to show that he understood his obligation to report when ordered. It was within the discretion of the trial judge to weigh this showing against the potential prejudicial effect. Proposed Rules of Evidence, Rule 4–04 (b), 46 F.R.D. 161, 228–230 (1969); C. McCormick, Evidence § 157 (1954).

■ 2. *Omitted Instruction.* As to the instructions, defendant claims that the trial judge agreed to instruct that all acts and statements of defendant both in and out of court could be considered but that the judge omitted the "out of court" phrase and merely stated that all acts and statements of defendant could be considered. (RT, vol. II, at 188) Defendant claims that his closing argument was based on the assumption that the phrase "out of court" could be included and that he was thereby prejudiced. We do not think the omission was very substantial and upon review of the closing argument do not find that defendant could have been prejudiced. Defendant's counsel, in referring to the out of court statements in his closing argument, said, "Basically the statements out of court are contained in the Selective Service file that is before you." (RT, vol. II, at 169) The Court emphasized in its instructions that all exhibits admitted in evidence were to be considered by the jury in its deliberations. RT, vol. II, at 184) Under these circumstances the claim of prejudice is without foundation.

■ 3. *Improper Instruction.* Defendant contends that the instructions were so broad that the issue of intent was effectively taken from the jury. We find this contention also without merit. The argument essentially goes to defendant's *motive* at the time he refused induction, not to his *intent.* Further, the court did instruct as follows: "If, on the other hand, defendant honestly believed that the law did not require him to submit to induction, then he did not intentionally violated [sic] the law." (RT, vol. II, at 188–89) Defendant's further argument that certain evidence was improperly excluded is also without merit. The trial court acted within the wide bounds of its discretion.

■ 4. *Free Exercise of Religion.* The final contention, that the selective service laws interfere with the free exercise of religion, has been rejected by this Court many times before. Clark v. United States, 236 F.2d 13 (9th Cir. 1956); George v. United States, 196 F.2d 445 (9th Cir. 1952); Richter v. United States, 181 F.2d 591 (9th Cir. 1950). *See,* United States v. Seeger, 380 U.S. 163, 188, 85 S.Ct. 850, 13 L.Ed. 2d 733 (1965) (Douglas, J., concurring).

The conviction is affirmed.