In the

# United States Court of Appeals
### For the Seventh Circuit

---

No. 15-2404

JOHN BERRON,

*Plaintiff-Appellant,*

*v.*

ILLINOIS CONCEALED CARRY LICENSING REVIEW BOARD, *et al.,*

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 2839 — **Charles R. Norgle**, *Judge.*

---

No. 15-2405

RONALD DESERVI,

*Plaintiff-Appellant,*

*v.*

JEREMY MARGOLIS, Chair of the Illinois Concealed Carry Licensing Review Board, *et al.,*

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 3881 — **Harry D. Leinenweber**, *Judge.*

_____

No. 15-2931

SETH GHANTOUS,

*Plaintiff-Appellant*,

*v.*

ILLINOIS CONCEALED CARRY LICENSING REVIEW BOARD, *et al.*,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 3544 — **Harry D. Leinenweber**, *Judge*.

_____

No. 16-1170

FOTIOS MOUSTAKAS,

*Plaintiff-Appellant*,

*v.*

EDWARD A. BOBRICK, *et al.*,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 9294 — **James B. Zagel**, *Judge*.

_____

ARGUED MAY 31, 2016 — DECIDED JUNE 17, 2016

_____

Before EASTERBROOK and WILLIAMS, *Circuit Judges*, and YANDLE, *District Judge*.[*]

EASTERBROOK, *Circuit Judge*. In the wake of *McDonald v. Chicago*, 561 U.S. 742 (2010), which held that the Second Amendment applies to the states, we concluded that the constitutional right to "keep and bear" arms means that states must permit law-abiding and mentally healthy persons to carry loaded weapons in public. *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012). Illinois then enacted a system for issuing and enforcing permits to carry concealed firearms. 430 ILCS 66/1 to 66/95. We have consolidated four appeals filed by persons who asked for concealed-carry permits and were turned down. Three district judges, presiding in these four suits, all ruled against the applicants.

Illinois issues a concealed-carry license to anyone who satisfies the statutory qualifications (see 430 ILCS 66/25), files the necessary paperwork, and pays the fees, unless the applicant would "pose a danger to himself, herself, or others, or a threat to public safety as determined by the Concealed Carry Licensing Review Board". 430 ILCS 66/10(a)(4). Law-enforcement agencies are entitled to present public-safety arguments against granting an application. See also 430 ILCS 66/15 (details about objections by law-enforcement agencies), 66/20 (details about the Board's composition and operations).

When these suits began, plaintiffs had a compelling position. They say that they met all statutory requirements but did not receive licenses because one or more law-enforcement agencies objected. The state police told them

---

[*] Of the Southern District of Illinois, sitting by designation.

that objections had been lodged, but not by whom or why. This left them unable to reply. More than 60 years ago the Supreme Court established that, when an agency is asked to reject an application, the agency must reveal at least a fair summary of the objection; otherwise a hearing is pointless. See *Simmons v. United States*, 348 U.S. 397 (1955); *Gonzales v. United States*, 348 U.S. 407 (1955). Legitimately confidential details, such as an informant's identity, may be withheld, but the applicant is entitled to know the basics. Yet under the agency's initial regulations no disclosure at all was required, and nothing is exactly what these plaintiffs received.

Illinois soon realized that the initial regulations, which had been drafted and issued in haste, were deficient in this respect and others. It adopted a new set of regulations that took effect on January 6, 2015. See 39 Ill. Register 1518–27 (Jan. 23, 2015). Under the revised regulations, the Board first considers whether the objection appears "on its face" to be an adequate reason to deny an application. 20 Ill. Admin. Code §2900.140(e). If so, the Board "shall send the applicant notice of the objection, including the basis of the objection and the agency submitting the objection." *Ibid*. The applicant has 15 days after receipt of this notice "to submit any additional material in response to the objection". *Id*. at §2900.140(e)(1). If the facts or their significance are disputed, the Board may hold a hearing to receive testimony from both the applicant and a representative of the objecting law-enforcement agency. *Id*. at §2900.140(c).

These changes in the Board's procedures led the district judges to think that plaintiffs' problems have been solved. The judges concluded that an injunction against a superseded regulation would be inappropriate, and that a judgment

entitling the plaintiffs to concealed-carry licenses would be equally inappropriate, because the validity of the objections to their applications remains undetermined. All three judges wrote that plaintiffs' proper recourse is to apply for licenses under the new rules.

None of the four plaintiffs has filed a fresh application with the Board. Plaintiff Seth Ghantous instead filed suit in state court. The court directed the Board to issue a concealed-carry license. That has been done; the license was mailed to him on May 23, 2016. His claim is moot, and we remand his suit with instructions to dismiss. See *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950). A second plaintiff, John Berron, also sued in state court and obtained a remand. But he lost again before the Board, so his suit is not moot.

The three unlicensed plaintiffs predict that, if they do apply under the new regulations, the Board will not reveal enough to permit them to respond with material evidence or relevant arguments. This amounts to a contention that §2900.140(e) is so blatantly unconstitutional that it can be swept away by a federal injunction no matter how it works—that it is unconstitutional "on its face," in the argot of adjudication. Yet the Supreme Court insists that, with few exceptions, statutes and regulations be evaluated in operation ("as applied") rather than peremptorily. See, e.g., *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449–51 (2008); *Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320, 328–30 (2006).

Section 2900.140(e) calls for disclosure of "the basis of the objection". We can imagine the Board being stingy with information—for example, saying only "agency X objects be-

cause the applicant is routinely in trouble with the law" or perhaps just repeating the language of 430 ILCS 66/10(a)(4). That sort of disclosure would be useless. But it is easy to imagine the Board being forthcoming—revealing why the objecting agency thinks the applicant dangerous and listing the history of arrests, domestic disturbances, threats of violence, or other reasons why a law-enforcement agency may think that this person's being armed in public poses risks to others. Which course the Board chooses affects whether the regulation as administered comports with the Constitution.

A federal court should not assume that the state will choose the unconstitutional path when a valid one is open to it. State and federal agencies may flesh out a vague scheme in the course of administrative adjudication. See, e.g., *Civil Service Commission v. Letter Carriers*, 413 U.S. 548 (1973); *Broadrick v. Oklahoma*, 413 U.S. 601 (1973). *Letter Carriers* and *Broadrick* deal with claims under the First Amendment; their holdings are no less applicable to claims under the Second Amendment. We therefore agree with the district judges that it would be premature to consider plaintiffs' objections to §2900.140(e). Likewise plaintiffs' prediction that the Board will write unilluminating decisions in proceedings under the new regulations, depriving them of their right to effective administrative or judicial review, is unripe.

Plaintiffs advance three broader objections to both the statute and the amended regulations. They start with a contention that requiring them to obtain a concealed-carry license is itself unconstitutional under the Second Amendment, just as prior restraint of speech is unconstitutional under the First Amendment. The problem with this argument

is that everyone is entitled to speak and write, but not everyone is entitled to carry a concealed firearm in public.

When holding in *District of Columbia v. Heller*, 554 U.S. 570 (2008), that the Second Amendment establishes personal rights, the Court observed that only law-abiding persons enjoy these rights, even at home. 554 U.S. at 626–28, 635. We concluded in *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) (en banc), that under *Heller* a person convicted of domestic violence may be barred from firearm ownership, and in *United States v. Meza-Rodriguez*, 798 F.3d 664 (7th Cir. 2015), that an alien not authorized to be in the United States similarly is not entitled to own a gun. Other decisions have approved additional substantive limits. Licensure is how states determine whether the requirements have been met.

If the state may set substantive requirements for ownership, which *Heller* says it may, then it may use a licensing system to enforce them. In *Heller* itself the plaintiff conceded that licensure is constitutional, 554 U.S. at 631, and the Court did not question that concession. Courts of appeals uniformly hold that some kind of license may be required. See, e.g., *Drake v. Filko*, 724 F.3d 426, 435 (3d Cir. 2013); *Kwong v. Bloomberg*, 723 F.3d 160 (2d Cir. 2013); *Woollard v. Gallagher*, 712 F.3d 865, 883 n.11 (4th Cir. 2013). (In citing these decisions we do not express any opinion on the validity of those licensing systems; we cite them only for the proposition that the Second Amendment does not prohibit all licensing.)

Although plaintiffs call the concealed-carry license redundant with the basic firearms-ownership licenses that they already possess, the different degrees of danger posed by possessing a weapon at home (the basic license) and carrying a loaded weapon in public (the concealed-carry li-

cense) justify different systems. See *Moore*, 702 F.3d at 937. Illinois requires all applicants for a concealed-carry license to complete a firearms-training course tailored to situations that those who carry guns in public may encounter. See 430 ILCS 66/25(6) (requiring the course), 66/75 (specifying what the course entails). That's just one of the differences between possessing guns at home and carrying guns in public. See *Shepard v. Madigan*, 734 F.3d 748, 751 (7th Cir. 2013). What's more, circumstances may change between the time someone receives a keep-at-home license (which is valid for ten years, see 430 ILCS 65/7) and the time he seeks a concealed-carry license. Illinois is entitled to check an applicant's record of convictions, and any concerns about his mental health, close to the date the applicant proposes to go armed on the streets.

Plaintiffs next maintain that, even if licenses may be required, they must be issued unless the state proves a disqualifying condition by clear and convincing evidence. Neither *Heller* nor *McDonald* is concerned with licensing, so this contention lacks support in the Supreme Court's most-applicable decisions. As a matter of administrative law, the proponent of a position bears the burden of showing entitlement by a preponderance of the evidence. See *Director, OWCP v. Greenwich Collieries*, 512 U.S. 267 (1994). Plaintiffs are the applicants for licenses, so they bear the burden of showing entitlement. To be more precise, a state may assign applicants that burden without transgressing the Constitution. Illinois is a little more generous, placing the burden on the state to show why an application should be denied. 430 ILCS 66/20(g).

Section 66/20(g) uses a preponderance standard, which is the norm in civil litigation. See, e.g., *Herman & MacLean v.*

*Huddleston*, 459 U.S. 375, 387–90 (1983); *Grogan v. Garner*, 498 U.S. 279, 286 (1991); *Octane Fitness, LLC v. ICON Health & Fitness, Inc*., 134 S. Ct. 1749, 1758 (2014); *Halo Electronics, Inc. v. Pulse Electronics, Inc*., No. 14–1513 (U.S. June 13, 2016), slip op. 12. We do not see why the Second Amendment would alter that standard, which applies to disputes about other kinds of property such as zoning and home ownership, occupational licenses such as law licenses, and other valuable licenses of all kinds, such as driver's licenses.

Finally, plaintiffs contend that the Board is biased because five of its seven members must have work experience with law-enforcement agencies:

> The Board shall consist of:
>
> (1) one commissioner with at least 5 years of service as a federal judge;
>
> (2) 2 commissioners with at least 5 years of experience serving as an attorney with the United States Department of Justice;
>
> (3) 3 commissioners with at least 5 years of experience as a federal agent or employee with investigative experience or duties related to criminal justice under the United States Department of Justice, Drug Enforcement Administration, Department of Homeland Security, or Federal Bureau of Investigation; and
>
> (4) one member with at least 5 years of experience as a licensed physician or clinical psychologist with expertise in the diagnosis and treatment of mental illness.

430 ILCS 66/20(a). The Constitution requires administrative panels to be impartial. See, e.g., *Morrissey v. Brewer*, 408 U.S. 471 (1972); *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970). As far as we can tell, however, the Supreme Court has never suggested that one's work experience compromises partiality. Due process requires disinterested adjudicators but not inexperienced or naïve ones. A rule forbids the participation of

any member of the Board whose *current* activities present a conflict of interest. 20 Ill. Admin. Code §2900.120. Past activities, by contrast, do not create disqualifying conditions unless they concern the applicant in question. Cf. *Williams v. Pennsylvania*, No. 15–5040 (U.S. June 9, 2016).

One of the district judges who heard plaintiffs' cases is a former Director of the Illinois State Police, yet plaintiffs have not argued that this disqualifies him under 28 U.S.C. §455. Other district judges were criminal prosecutors or represented criminal defendants; they, too, routinely draw on their experience as a source of knowledge and wisdom without compromising impartiality in their judicial positions. Six of the Seventh Circuit's nine active judges (including two members of this panel) worked as lawyers in the United States Department of Justice; that does not perpetually disqualify them in all cases involving the interests of the United States or calling for an assessment of law-enforcement practices. Members of the Securities and Exchange Commission almost always have experience in the securities industry; this provides a basis for knowledgeable decision rather than a ground of disqualification. Illinois believes that a Concealed Carry Board staffed by people with experience in law enforcement (including the experience of being a federal judge) will do a better job predicting which applicants would threaten public safety if armed in public; the Constitution permits it to follow that path.

In appeal No. 15-2931, filed by Seth Ghantous, the judgment is vacated, and the case is remanded with instructions to dismiss as moot. In the other appeals, the judgments are affirmed.