### UNITED STATES v. WIDER.
### Cr. No. 43319.

United States District Court,
E. D. New York.
March 17, 1954.

Leonard P. Moore, U. S. Atty., Brooklyn, N. Y., Lewis S. Flagg, III, Asst. U. S. Atty., Brooklyn, N. Y., for plaintiff.

H. Adlerstein, Brooklyn, N. Y., for defendant.

GALSTON, District Judge.

The defendant is charged with violating the Universal Military Training &

Service Act of 1948, as amended, for alleged willful failure to obey a duly constituted order of the local selective service board to report for induction. 50 U.S.C.A.Appendix, § 462.

The defendant waived a trial by jury. The defendant registered on November 26, 1948 with Local Board No. 2, Islip, Suffolk County, New York, and executed a Classification Questionnaire on December 29, 1950. On or about March 21, 1951, he executed and returned to the local board a special form for conscientious objectors. He was classified I-A-O on March 28, 1951.

On May 5, 1951 the local board received a letter from the defendant stating that by reason of his religious belief he was opposed to non-combatant as well as combatant service. He requested a IV-E classification. Pursuant to an order to report for armed forces physical examination, the defendant reported on May 9, 1951 and was found acceptable for service in the armed forces. On May 15, 1951 the local board classified the defendant as I-A.

His Selective Service System file was reviewed by the Appeal Board for the State of New York on June 4, 1951, and the registrant was found not eligible for either I-A-O or IV-E, by a vote of 5 to 0 of the Appeal Board. Pursuant to section 6(j) of the Universal Military Training and Service Act of 1948, as amended, 50 U.S.C.A.Appendix, 456(j), the Appeal Board referred the registrant's claim for exemption from training and service to the Department of Justice for inquiry and hearing.

A hearing was conducted on September 19, 1951 by a hearing officer, duly designated by the Department of Justice. The hearing officer recommended that the registrant be retained in I-A. In a communication dated January 2, 1952, the Department of Justice informed the Appeal Board that after examining and reviewing the registrant's entire file and record the Department concurred in the recommendation made by the hearing officer, and recommended that the registrant should not be classified as a conscientious objector. The hearing officer's report was forwarded to the Appeal Board for its consideration. On February 4, 1952, the Appeal Board for the State of New York, Northern District, by a vote of 4 to 0, classified registrant in I-A. The registrant was duly notified of the action of the Appeal Board.

A notice, dated February 20, 1952, was sent to the registrant ordering him to report for induction on March 11, 1952. On February 21, 1952, the registrant appeared at the local board and executed a memorandum stating:

"I shall not appear for induction."

The registrant failed to report for induction on March 11, 1952. He was classified as I-A delinquent on April 23, 1952.

█ It is the defendant's contention that the classification was erroneous. On the other hand the government contends that the defendant is not entitled to judicial review of the validity of the classification since he failed to report for induction. It is also the government's position that there is a basis in fact for the classification given.

In Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 349, 88 L.Ed. 305, the Supreme Court held that there was no constitutional or statutory requirement that Congress provide for judicial review of the validity of local boards' classifications before final acceptance of the registrant for national service. In affirming the defendant's conviction for failure to report for induction or assignment to work of national importance, the Court held that he was not entitled to the defense that he was erroneously classified, since he had failed to report "for the last step in the selective process." The later case of Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567, held that the selective process is to be regarded as completed, for purposes of judicial review, where the registrant reported for induction and was

finally accepted, but refused to submit to induction.

The defendant here contends that the selective process was exhausted administratively when he completed his preinduction physical examination and was found acceptable for service, citing Gibson v. United States, 329 U.S. 338, 67 S. Ct. 301, 91 L.Ed. 331. In Dodez v. United States, decided together with the Gibson case, supra, the Court held that the failure of the defendant classified as a conscientious objector, to report for assignment to work of national importance did not foreclose him from making the defense that his classification was invalid. The decision was based on the fact that the regulations then applicable provided for a pre-induction physical examination and that by amendment between the time of the Falbo case and issuance of the order to Dodez to report, the regulations applicable to Dodez providing for physical examination by the camp physician and consequent possible rejection at the camp, was eliminated. In the circumstances the Court felt that the registrant had performed all requirements affording possibility of relief, and that the administrative process had been completed.

In the Dodez case the Supreme Court distinguished the Falbo case on the basis of the regulations applicable in each instance, particularly the regulations having to do with the requirement of a physical examination at the time of induction. In the case at bar, it appears that Special Regulations No. 615–180–1 of the Department of the Army, issued April 27, 1950 were in force on February 20, 1952, the date of the order notifying the defendant to report for induction. Paragraph 22 of the regulations provides:

"Registrants found acceptable for military service on preinduction physical examination and reporting to an induction station for induction within 21 to 120 days of such examination will be given a thorough physical inspection, with all clothing removed, for contagious dis-eases, apparent defects, and intercurrent illness or injury."

As noted, the defendant was given a preinduction physical examination on May 9, 1951. The order to report for induction required the defendant to report on March 11, 1952, which was more than 120 days after the physical examination.

Apparently the government takes the position that the defendant comes within the regulations in respect to "postponed registrants", since he was not ordered to report for induction within the 120-day period. Paragraph 27c of SR 615–180–1 provides for induction of postponed registrants without a new physical examination. However, the section also makes the induction subject to the following:

"No condition has intervened which alters the original physical qualification based on the preinduction physical examination. In order to ascertain the above, each registrant will receive a careful and thorough physical inspection at the time he reports for induction."

Paragraph 2 of SR 615–180–1 defines "postponed registrant" as follows:

"A postponed registrant is a registrant who, having been classified as available and found acceptable for service, has been ordered to report for induction in his proper turn and then had the date of reporting postponed to a later date * * *."

Insofar as the record here discloses, the only order to report for induction is that dated February 20, 1952. Moreover, there is nothing to indicate that the date of reporting on this, or any other order was ever postponed to a later date. It seems, therefore, that the defendant's status is not such as will bring him within the definition of a postponed registrant.

It is true that subsequent to his being classified I–A on May 15, 1951, the files of the local board record that an appeal was taken from the classification.

The regulations of the Selective Service System provide, of course, that a registrant shall not be inducted during the time an appeal is pending. 32 CFR 1626.41. However, the language used in defining a postponed registrant as one who "has been ordered to report for induction in his proper turn and then had the date of reporting postponed to a later date" indicates that what was intended was a coverage more limited than the general right to have induction postponed, whether or not an order to report is outstanding, pending an appeal of the local board's classification.

In view of the fact that the interval between the defendant's preinduction physical examination and the date of reporting exceeded 120 days, and that the provisions of section 27c are inapplicable, section 16 of SR, 615–180–1 becomes pertinent. It states:

"Selective service registrants found acceptable for military service normally will be ordered to report to induction stations in not less than 21 and not more than 120 days after the preinduction examination. If the lapse of time between the preinduction examination and the appearance of the registrant for induction is more than 120 days, another complete examination is required to determine acceptability and immediate induction thereafter, except in the case of postponed registrants, in which the provisions of paragraph 27c will govern."

It is evident from the foregoing that upon reporting for induction the defendant would have been required to undergo not merely a physical inspection, but another complete physical examination. Such examination might have resulted in his exemption or reclassification. Thus there still remained a further possibility of relief in the selective service process beyond the order to report for induction. Therefore the Gibson and Dodez cases are distinguishable, and the Falbo case is controlling. In United States v. Balogh, 160 F.2d 999, certiorari denied, 331 U.S. 837, 67 S.Ct. 1522, 91 L.Ed. 1850, the Court of Appeals of this Circuit reached the same conclusion with respect to a similar but earlier regulation of the Army Department.

The defendant also attempts to distinguish the Falbo case on the ground that the Act of 1948, as amended, 50 U.S.C.A.Appendix, § 451 et seq., upon which the present indictment is grounded, should be construed more liberally in the registrant's favor with respect to judicial review, as compared to the 1940 Act, which was in issue in the Falbo case. It is contended that it was the purpose of Congress to allow such a liberal construction. However, an examination of the legislative history of the 1949 Act shows express approval of, and an intent to continue the doctrine of judicial review as it had been developed by the Supreme Court. The Senate Report reads, in part, as follows:

"Section 12. Penalties

"(a) Enforcement.—This subsection provides the same penalties for violations of the provisions of this legislation as were provided for violations of the 1940 act, and is substantially a reenactment of section 11 of that act. * * * No changes have been made in the nature of judicial review of selective-service classifications. Instead, it is contemplated that the procedure and scope of review defined by the Supreme Court in enforcing the 1940 act will be equally applicable under this legislation.

"(See Falbo v. United States, 320 U.S. 549 [64 S.Ct. 346, 88 L.Ed. 305]; Estep v. United States, 327 U.S. 114, 122–123 [66 S.Ct. 423, 90 L.Ed. 567]; Cox v. United States, 332 U.S. 442, 448–449 [68 S.Ct. 115, 92 L.Ed. 59].)" Senate Report #1268, U. S. Code Congressional & Administrative Service, 80th Congress, 2nd Session, 1948, page 2008.

The defendant's defense here is that he was not required to report for induction because the classification was erroneous. Since he is precluded from

raising the defense at this time, it follows that he must be found guilty of the charge in the indictment.

■ Assuming that judicial review of the defendant's classification is possible at this time, the Supreme Court has stated the scope of review to be as follows:

"The provision making the decisions of the local boards 'final' means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant." Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 427, 90 L.Ed. 567.

The Estep case was one arising under the 1940 Act. However, in Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, arising under the 1948 Act, as amended, the same standard for judicial review was stated and applied.

■ The evidence upon which the court is to predicate its determination whether there is a basis in fact for the classification given is that upon which the local board and the Appeal Board acted, viz., the facts appearing in the registrant's selective service file. Cox v. United States, 332 U.S. 442, 453–454, 68 S.Ct. 115, 92 L.Ed. 59. This defendant's selective service file contains no record of the reasons why the local board and the Appeal Board denied his claim for exemption as a conscientious objector, doubtless because the sole evidence in support of the defendant's claim is that contained in written statements submitted by the defendant himself. These

consist of two letters and the answers to questions contained in SSS Form No. 150, "Special Form for Conscientious Objector."

The following questions, and answers thereto, are included in the SSS Form No. 150 executed by the defendant:

"Series II.—Religious Training & Beliefs

"2. Describe the nature of your belief which is the basis of your claim * * *."

"(ans.) I believe that in the eyes of the Lord it is irreligious to kill; that to kill is only to overcome one evil with a much greater evil. My belief in the Lord involves duties which are by far superior to those arising from any human relation.

"3. Explain how, when, and from whom or from what source you received the training and acquired the belief which is the basis of your claim * * *.

"(ans.) I have received my religious training from the Jewish Synagogue and my natural surroundings. It has been a conducive atmosphere for religious practice and thought.

\* \* \* \* \* \*

"6. Describe the actions and behavior in your life which in your opinion most conspicuously demonstrate the consistency and depth of your religious convictions.

"(ans.) I have been to the best of my poor ability a close follower of the precepts of my religion and belief.

"7. Have you ever given public expression, written or oral, to the views herein expressed as the basis for your claim * * *?

"(ans.) No."

The two letters submitted by the defendant to the local board describe in more detail the feelings of the registrant with respect to his religious beliefs.

So far as the record indicates, the defendant did not present outside proof, either in the form of documentary evidence or by witnesses, except that his mother appeared and testified at the hearing before the hearing officer designated by the Department of Justice. Furthermore, the defendant's file is silent as to any affirmative evidence obtained by the local board either in support of, or contrary to the defendant's claim. The Appeal Board, however, had the recommendation of the Department of Justice and the report of the hearing officer before it when it considered the claim.

Under the selective service laws, a deferment from military service is not a matter of right, but is in the nature of a privilege conferred by Congressional recognition of the existence of conscientious religious views. Consequently, the burden is upon the registrant claiming exemption to prove that he comes within the excepted class. Dickinson v. United States, supra, 346 U.S. at pages 395–397, 74 S.Ct. at pages 157, 158.

In Cox v. United States, supra [332 U.S. 442, 68 S.Ct. 118] the selective service files of the registrants included affidavits and other documents attesting to their work as "duly ordained ministers" of the Watchtower Bible & Tract Society. In affirming their conviction, the Court, 332 U.S. at page 451, 68 S.Ct. at page 119, stated:

"We confine ourselves to the facts appearing in the selective service files of the three petitioners, although the only documents dealing with the petitioners' status as ministers were submitted by petitioners themselves. The documents show that Thompson and Roisum spent only a small portion of their time in religious activities, and this fact alone, without a far stronger showing than is contained in either of the files of the registrants' leadership in church activities and the dedication of their lives to the furtherance of religious work, is sufficient for the board to deny them a minister's classification. As for Cox, the documents suggest but do not prove that Cox spent full time as a 'pioneer' * * *. As he made claim of conscientious objector classification only after he was reclassified I–A from IV–F and still later claimed ministerial exemption, the board was justified in deciding from the available facts that Cox had not established his ministerial status."

See also Eagles v. United States ex rel. Samuels, 329 U.S. 304, 316–317, 67 S.Ct. 313, 91 L.Ed. 308.

In Dickinson v. United States, supra, the decisive issue was whether there was a basis in fact for denying the petitioner's claim for exemption as a minister under section 6(g) of the Universal Military Training & Service Act of 1948, as amended, 50 U.S.C.A.Appendix, § 456 (g). In addition to the testimony of the petitioner, there was submitted on his behalf affidavits and letters from a "supervisor" for the Watchtower Bible & Tract Society and from the Society itself. The evidence established the uncontradicted facts that he was baptized (the mark of ordination to Jehovah's Witnesses) that he was working as a full time "pioneer" minister of the Society, that he had voluntarily left his 40-hour-a-week job as a radio repairman, and that he received no salary for his missionary or "company servant" work, but lived on $35 a month earned by a weekly average of 5 hours of radio repair work. In reversing the petitioner's conviction for refusing to submit to induction, the Court, 346 U.S. at page 396, 74 S.Ct. at page 157, stated:

"The court below in affirming the conviction apparently thought the local board was free to disbelieve Dickinson's testimonial and documentary evidence even in the absence of any impeaching or contradictory evidence. * * * However, Dickinson's claims were not disputed by any evidence presented to the selective service authorities, nor was any cited by the Court of Appeals. The task of the courts in

cases such as this is to search the record for some affirmative evidence to support the local board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities. We have found none here.

"Local boards are not courts of law and are not bound by traditional rules of evidence; they are given great leeway in hearing and considering a variety of material as evidence. * * * But when the uncontroverted evidence supporting a registrant's claim places him prima facie within the statutory exemption, dismissal of the claim solely on the basis of suspicion and speculation is both contrary to the spirit of the Act and foreign to our concepts of justice."

Thus in examining the Dickinson case in the light of the earlier cases, it appears that the Court took the view that Dickinson, having the burden of proof, had submitted sufficient evidence to make out a prima facie case in support of his claim. In the absence of affirmative facts to rebut or impeach the prima facie evidence, the Court concluded that there was no basis in fact for the board's denying the claim.

██ The issue in the case at bar is then whether the fact that the registrant claims his religious beliefs prevent his participation in war in any form, whether combatant or non-combatant, is sufficient to constitute a prima facie case under the rule of the Dickinson case. The recommendation of the Department of Justice and the report of the hearing officer are regarded as advisory only under the statute, as amended, 50 U.S.C. A.Appendix, § 456(j), and statements contained therein do not operate to correct the absence of facts in the records of the Selective Service System registrant's selective service files. As stated by the Supreme Court in United States v. Nugent, 346 U.S. 1, at pages 8–9, 73 S.Ct. 991, at page 996, 97 L.Ed. 1417,

"The Department of Justice takes no action which is decisive. * * * it has long been recognized that neither the Department's 'appropriate investigation' nor its 'hearing' is the determinative investigation and the determinative hearing in each case."

When the Dickinson case refers to the requirement of some affirmative evidence to support the board's finding "in cases such as this", it seems that what the Court had in mind were cases wherein the registrant had submitted, in support of his claim, evidence which was more than statements of a subjective state of mind relative to his religious beliefs. This is not to say that a registrant claiming exemption must always support his claim by presenting documentary evidence or witnesses to testify in his behalf. His own testimony may, in proper circumstances, contain evidence of actions or other objective manifestations of the sincerity of his religious beliefs.

██ It was within the province of the selective service authorities to disbelieve the registrant's own statements or to doubt his good faith. For the court now to say that the board erred in disbelieving the registrant would be to usurp the board's function and to go contrary to the established rule that the courts are not to weigh the evidence. Moreover, if the claim to exemption because of religious beliefs without more, is sufficient to make out a prima facie case where the local board, having the advantage of personally meeting and talking to the registrant, doubts his sincerity or good faith, the practical effect would be that the actual burden of proof would fall on the selective service authorities to show that the registrant is not eligible to exemption. That, of course, is contrary to existing law.

██ The defendant also contends that there was a violation of pertinent regulations in that his selective service file contains no summary of the local board hearing held on May 1, 1951. He

684

cites section 1623.1(b) of 32 CFR, which states, in part, as follows:

"* * * Since it is imperative that appeal agencies have available to them all information on which the local board determined the registrant's classification, oral information shall not be considered unless it is summarized in writing and the summary placed in the registrant's file."

However, before "oral information" can be summarized in writing there must be information to summarize. The defendant has failed to show here that any such information was presented to the board. So far as the record discloses, no additional information beyond that contained in the selective service file was presented to the local board.

The regulations provide that when the registrant appears before the local board he may point out the class or classes in which he thinks he should have been placed, and may direct attention to any information in his file which he believes the local board has overlooked, or to which he believes it has not given sufficient weight. 32 CFR 1624.2(b). There is nothing in the record to indicate that the defendant directed the board's attention to such information; consequently there is no reason to conclude that the board violated the regulations.

 Finally there remains for consideration the application made by the defendant's attorney during the trial for the right to examine the F.B.I. report of the investigation made pursuant to the hearing conducted by the Department of Justice in accordance with section 456(j) of Title 50 U.S.C.A.Appendix. The report was not transmitted to either the local board or the Appeal Board. The letter from the Department of Justice forwarding the report of the hearing officer to the Appeal Board makes no reference to the F.B.I. report. Moreover, the hearing officer's report does not purport to base his recommendation on any material contained in the F.B.I. report. Consequently the defend-

ant's application was properly denied. See United States v. Nugent, 346 U.S. 1, 6, note 10, 73 S.Ct. 991, 97 L.Ed. 1417.

In view of the foregoing it must be concluded that the classification made by the selective service authorities was not invalid.

Pursuant to Rule 23, subdivision (c), of the Federal Rules of Criminal Procedure, 18 U.S.C.A., since the trial was without a jury the Court makes a general finding of guilty, and notes that there has been no request that the facts be found specially.