**Roger Dean CLARK, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 14176.**

United States Court of Appeals
Ninth Circuit.

Dec. 3, 1954.

J. B. Tietz, Los Angeles, Cal., Hayden C. Covington, Brooklyn, N. Y., for appellant.

Lloyd H. Burke, U. S. Atty., Richard H. Foster, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before HEALY and POPE, Circuit Judges, and YANKWICH, District Judge.

POPE, Circuit Judge.

The appellant Clark was indicted and convicted of the offense of knowingly refusing to be inducted into the armed forces of the United States in violation of the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 451 et seq. He asserts that his Selective Service classification in Class I-A, (a person available for military service), was without basis in fact and that such action was arbitrary and capricious.

The record of Clark's classification by the Selective Service boards shows that he filed in addition to his questionaire a claim that he was a conscientious objector opposed to participation in both combatant and noncombatant training or service in the armed forces. His local board on November 19, 1951, placed him in Class I-O, that is to say, found him to be a conscientious objector of that character. On December 3, 1951, following his notification of his classification, he made a personal appearance before the board making inquiry as to the effect of his classification in Class I-O and asserting that he should be classified in Class IV-D, as a minister. The board declined this further claim of exemption and continued him in Class I-O. He appealed to the appeal board which made a determination that he should not be classified in either I-A-O or I-O and apparently thereupon transmitted the file to the Department of Justice for a hearing and advisory opinion with respect to the conscientious objector claim. The Department returned the file to the appeal board advising that since the local board had granted the conscientious objector classification, it, the Department, was without jurisdiction. Thereafter and on July 7, 1952, the appeal board returned the file to the local board requesting the latter to ask the registrant four specific questions. Clark appeared in response to the request by the local board and answered the questions thus submitted by the appeal board. His answers disclosed that he would use force to defend himself from a personal attack; that he would use force to protect his wife or family from attack; that he would use force to protect a coreligionist from attack; and that if he were in dire need he would accept employment in an industry which directly or indirectly supported a war effort provided that he went of his own free will and was not ordered to do so by the Government.[1]

---

1. The local Board's record of this interview is as follows:
"Mr. Roger Dean Clark appeared in person before this Local Board July 21,

1952—He states he is employed by the Pepsicola Co. and delivers soda water to all retail stores and also to Camp

The local board did not return the answers given to the appeal board but reclassified the registrant in Class I–A. From this action the registrant appealed to the appeal board which then for a second time transmitted registrant's file to the Department of Justice for consideration there. On February 27, 1953, the Department, by special assistant to the Attorney General, advised that Clark had been given a hearing before a hearing officer and after stating Clark's educational background, his membership in the Jehovah's Witnesses, and the claims made in his conscientious objector form, continued:

"The investigation reveals the following information. Registrant's present employer is satisfied with his work. Present neighbors and acquaintances believe registrant is sincere in his conscientious objector position and advise he possesses good moral character. References observe that he has been conscientious in his religious beliefs and practices. Registrant does not smoke or drink. He attends Jehovah's Witnesses meetings regularly. Registrant's parents have also been devout church members. Former employments were verified and favorable. Former neighbors and associates corroborated other evidence of registrant's sincerity and excellent character. He seemed very religious. Two brothers are not of the Jehovah's Witness faith and one served in the United States Army, but they attest to registrant's good faith. School records reflect that registrant was a 'below average' student.

"Registrant appeared for his hearing with three witnesses. The Hearing Officer noted that this was the second time he had heard the case, due to the fact that registrant's Local Board had originally granted his conscientious objector claim and his appeal had been on ministerial grounds. The Federal Bureau of Investigation report was reviewed and established registrant's bona fide church membership for many years and his reputation for honesty and sincerity. Registrant told the Hearing Officer that among the customers of the company for which he works is a military establishment. On interrogation registrant stated that he would willingly work in a war plant as a civilian but not if enrolled by the Government. The contribution he would be making to the war effort was immaterial in

---

Stoneman for the consumption of our Armed Forces. He states, 'I am a conscientious objector—doing ministerial work.' How much of a problem does your conscientious objection present. I object to give service in any to the government.
Mr. Clark was ask[ed] the following questions:
1. Mr. Clark would you defend yourself from a personal attack by force? Ans. Yes I would use force to protect, myself from an attack.
2. Mr. Clark would you use force to protect your wife or family from an attack? Ans. Yes I would use force if some one were attacking my wife or family.
3. Mr. Clark would you use force to defend your co-religionist from attack? Ans. Yes I would use force to protect them, if any one attack my congregation I would use force to protect them.

4. Mr. Clark would you accept employment if you were in dire need in any industry which directly or indirectly supports the war effort. Ans. Yes if I were in dire need of employment I would go to work at the Columbia Steel Co. or any firm which may directly or indirectly support the effort. That is if I went of my own free will but I would not accept employment in such a firm if I was order[ed] to do so by the Government. Then if the Selective Service requested you to work at the Columbia Steel Co. you would not accept? Ans. No I would not. Would you hesitate to call the Police if some one attack you or your Congregation—Yes I would call the police in that case. If you could make more money working at the Columbia Steel would you go to work there. Yes I would go to work there if I like the work and if it paid more money. But only if I went there myself and was not ordered to do so by the government."

his consideration. Registrant admitted that he would use force in self defense, defense of family and fellow church members. This was in contradiction to his statement in his SSS Form No. 150. Registrant testified that he devoted eight hours a week to his religion.

"The Hearing Officer believed that registrant was a sincere church member, but his statements on force and employment connected with war effort, in the Hearing Officer's opinion, precluded him from classification as a conscientious objector under the law. Accordingly, he recommended a I-A classification.

"After consideration of the entire file and record the Department of Justice finds that the registrant's objections to combatant and noncombatant service are not sustained. It is, therefore, recommended to your Board that registrant's claim for exemption from both combatant and noncombatant training and service be not sustained."

The Appeal Board then classified Clark in Class I-A. He was ordered to report for induction and at the induction ceremony he refused to be inducted and this prosecution followed.

The record discloses that the local board and the appeal board both gave Clark the I-A classification on the strength of his statements, first, that he would use force for the defence of himself, his family or a member of his congregation; and second, that he would be willing, under certain circumstances, to accept employment in an industry which directly or indirectly aided the war effort. This is not a case in which it can be concluded that the local board based its classification upon a disbelief in the sincerity of Clark or in the genuineness of his asserted conscientious objection.

As noted above, the local board first gave Clark a I-O classification and continued him in that classification after his personal appearance before the board where the board had an opportunity to question and observe him. It was only after the securing of the answers to the questions mentioned above that the local board changed the classification to I-A. This discloses that it was these questions which led to the change of classification and not any disbelief in the sincerity of the registrant.

As for the appeal board, when it finally classified Clark, it had before it the registrant's original questionaire, his answers to the questions relating to his conscientious objection in the special form furnished for this purpose, and sundry affidavits furnished by him to the local board in which friends and acquaintances of his affirmed his statements as to his religious activity and beliefs. It also had before it the record of Clark's personal appearance before the local board and the fact that following that appearance the local board continued him in I-O. In addition the appeal board also had the answers which Clark had given to the questions which it had requested the local board to propound to the registrant. Finally, the appeal board had before it the foregoing recommendation of the Department of Justice. Nothing in any of these matters would permit the appeal board to conclude that the local board had doubted Clark's sincerity or that it had disbelieved him. In addition, the Department had called attention to the fact that all of the material available to the hearing officer indicated the sincerity and the strong religious faith of Clark and his active participation in the work of his religious organization.

It must be concluded that no portion of that which was thus before the appeal board furnished any basis for that board's rejection of a conscientious objector's exemption, at least so far as the conscientious objection to combatant military service is concerned. On the contrary, it is apparent that the board's action was predicated upon the assumption that registrant's answers to the four questions submitted through the appeal board necessitated a denial of any con-

scientious objector exemption. This was substantially what the Department of Justice letter, quoted above, had advised.

In Hinkle v. United States, 9 Cir., 216 F.2d 8, we held that a belief in self-defense on the part of a registrant does not, as the Department in this case advised the appeal board, require a denial of a conscientious objector exemption. In Franks v. United States, 9 Cir., 216 F.2d 266, we held that while a willingness to work in a naval shipyard might tend to show that a registrant was not conscientiously opposed to noncombatant service, yet that attitude would not be inconsistent with a conscientious objection to combatant service. We said the same thing in Goetz v. United States, 9 Cir., 216 F.2d 270.

Upon the authority of the cases here cited we hold that Clark's classification was without basis in fact and that accordingly he was not guilty of the offense charged.

The judgment is reversed.