UNITED STATES of America
v.
Richard Secor CORLISS, Defendant.

UNITED STATES of America
v.
Walter HEROLD, Defendant

UNITED STATES of America
v.
Fred August HEISE, Defendant.

UNITED STATES of America
v.
James Wilson PARMITER, Defendant.

United States District Court
S. D. New York.
May 19, 1959.

Album C. Martin, Asst. U. S. Atty., New York City, for the Government.

Herman Adlerstein, New York City, for defendants.

THOMAS F. MURPHY, District Judge.

Each of the above defendants, members of Jehovah's Witnesses claiming to be conscientious objectors, was indicted for refusing to be inducted into the United States Army.[1] Each waived a jury trial and was separately tried to the court.

---

[1]. Section 462, Title 50 U.S.C.A.Appendix, Universal Military Training and Service Act, 62 Stat. 622, and Regulation 32 C.F.R. 1632.14 thereunder.

Upon consideration of all the evidence we find Richard Secor Corliss, Walter Herold and Fred August Heise guilty as charged, and James Wilson Parmiter not guilty. As to the defendants found guilty we will discuss the facts in each case which support the Board's determination and where applicable the claims advanced of denial of due process. In the Parmiter case we will discuss the facts which show that there existed no basis in fact to support the determination of the Board.

Since all of these cases present somewhat similar problems we deem it appropriate to summarize certain principles applicable to each.

■ Exemption from military service is a privilege granted by Congress, not a right. Campbell v. United States, 4 Cir., 1955, 221 F.2d 454, 460; United States v. Hein, D.C.N.D.Ill.1953, 112 F. Supp. 71, 73. It is incumbent upon the registrant to establish to the satisfaction of the local board his eligibility for deferment or exemption. 32 CFR 1622.1 (c), 1622.10.

■ If the claim for exemption is based on conscientious objection it must be supported by evidence of subjective convictions. It cannot be that the mere assertion by the registrant that he has the requisite subjective convictions establishes his right to the privilege. United States v. Wider, D.C.E.D.N.Y. 1954, 119 F.Supp. 676, 683; Campbell v. United States, supra, 221 F.2d at page 457.

■ The function of the District Court in cases such as these is to examine the entire file or record relating to the registrant's claim for conscientious objector classification to determine if there is any basis in fact to support the Board's determination. "When the record discloses any evidence of whatever nature which is incompatible with the claim of exemption we may not inquire further as to the correctness of the board's order." United States v. Simmons, 7 Cir., 1954, 213 F.2d 901, 904, reversed on other grounds Simmons v.

United States, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453. Courts cannot substitute their judgment on the weight of the evidence for that of the Board. Nor need they look for substantial evidence to support such determination.

■ In such cases the ultimate inquiry is directed to the sincerity of the registrant's objecting on religious grounds, to participation in war in any form. Evidence providing the basis in fact to support the Board's rejection of the claimed exemption must show or allow an inference of insincerity or bad faith on the part of the registrant. The inquiry is purely a subjective one, but any fact casting doubt on or affirming the veracity of the registrant is relevant. The court must examine the record for evidence before the Board of objective facts bearing on the question of sincerity, and also the Board's findings relative to the demeanor and appearance of the registrant as each may have influenced their determination. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428.

■ It is well to state at the outset that mere membership in a certain sect cannot by itself be sufficient to establish the ultimate fact in question. Though relevant, it must be borne in mind that it is not registrant's sincerity of belief in a particular creed, or adherence to a given sect that is under scrutiny. Rather, it is his personal objection to participation in war based upon his religious training and belief. His personal views on the propriety of the use of force and non-combatant service are crucial. Membership in a particular faith does not preclude personal freedom of views on these topics. White v. United States, 9 Cir., 1954, 215 F.2d 782, 784, 785, certiorari denied 348 U.S. 970, 75 S.Ct. 528, 99 L.Ed. 755. The most cogent evidence that may be available to the Board relevant to a registrant's conscientious objection to participation in war in any form may be his demeanor and appearance and his credibility based upon his oral and written statements.

In Witmer v. United States, supra, the Supreme Court, speaking of the Dickinson case, Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132, reasoned that since the claim of the registrant there, that he was entitled to classification as a minister, was established prima facie by objective facts, the Board's inquiry should not have been directed to his sincerity or motive in becoming a minister, but merely into the objective fact of whether or no he was a minister of religion within the meaning of the Act. The Board could not deny his claimed classification on mere disbelief of objectively demonstrable facts. In the cases at bar, as in the Witmer case, involving claims for classification as conscientious objectors, the search is for the truth of an asserted subjective prerequisite. Any fact affirming or casting doubt on the registrant's veracity is considered affirmative evidence.

## Richard Secor Corliss

Defendant was born on February 2, 1934. He filed his Classification Questionnaire on April 2, 1952, and in it claimed to be a conscientious objector to military service and requested Form No. 150 for that purpose. On May 27, 1952, the local board classified him 1–A. Subsequently, on November 30, 1953, he was mailed Form No. 150 which was returned to the Board on December 15, 1953. On January 5, 1954, the Board again classified him 1–A after considering the information contained in his Form No. 150, and mailed him notice thereof the following day. Defendant was notified to appear for a hearing before the Board on February 2, 1954, pursuant to his written request therefor on January 14, 1954. At the conclusion of the hearing defendant requested that his file be forwarded for appeal and thereafter on February 15, 1954, the Board complied with his request and so notified him.

The Appeal Board on July 31, 1956, classified defendant 1–A following the recommendation of the Department of Justice that defendant's claim be denied. The Department's recommendation had been preceded by an investigation conducted by the Federal Bureau of Investigation and a personal appearance of defendant before a hearing officer of the Department of Justice.

Upon defendant's refusal to be inducted this prosecution followed.

Defendant's first contention is that he was denied due process because the local board failed to mail him notice of the Board's action upon his personal appearance on February 2, 1954. 32 CFR 1624.2(d) provides: "After the registrant has appeared before the * * * local board * * * the local board, as soon as practicable after it again classifies the registrant, or determines not to reopen the registrant's classification, shall mail notice thereof on Notice of Classification (SSS Form No. 110) to the registrant * * *."

The local board obviously did not reclassify defendant after the February 2, 1954, hearing. Under the regulations it was not required to reclassify; it could make the alternate determination not to reopen. 32 CFR 1624.2(c). The board entered upon Form 100 a notation of defendant's appearance on that date, and recorded a unanimous vote though it does not appear upon what question the vote was taken. Apparently no new information relative to his claim of conscientious objector was submitted to the Board by defendant at that hearing and the conclusion seems inescapable that the Board voted not to reopen, at the same time informing defendant of that fact. This seems to follow because implicit in defendant's request that the Board forward his file for appeal is his consciousness of the Board's rejection of his claim of exemption.

The prejudice defendant claims lies in the fact that he was deprived of the opportunity to file a statement with his appeal as provided for in 32 CFR 1626.12. We find this argument to be without merit. Defendant may be held to have waived this opportunity when he requested that the local board forward his file for appeal at the conclusion

of the hearing on February 2, 1954, and the Board granted his request about two weeks later. Furthermore, defendant was not prejudiced thereby since he could have filed such statement after notification by the Board that his file had been forwarded in accordance with his wishes. See Gonzales v. United States, 348 U.S. 407, 415, note 6, 75 S.Ct. 409, 99 L.Ed. 467.

On the issue whether there was any basis in fact to support the Board's determination it appears that at the time of defendant's hearing on February 2, 1954, his parents were both members of Jehovah's Witnesses; that defendant was a high school graduate and employed full time as a machine operator in a textile firm at a salary of $48 per week; that he was living at home with his parents and four brothers and two sisters, all younger than defendant (ages 3 to 16). It also appeared that an older brother had recently died at the age of 23, apparently while in the United States Coast Guard, leaving a widow and three children. In a supplemental statement filed by defendant on that date he listed the income and expenses for the family group to which he contributed $30 per week. These expenses amounted to $598 a month, and the income from all sources amounted to about $550 a month.

Defendant's neighbors and employer were aware of his affiliation with Jehovah's Witnesses and references attested to his sincerity and character. There were no unfavorable reports impinging on his reputation or character.

■ In this case the recommendation notes that defendant stated before the hearing officer that he "asked for his conscientious-objector classification because he should devote more time to Jehovah's work of preaching the Gospel." That is "not an objection which the Act recognizes." Tomlinson v. United States, 9 Cir., 1954, 216 F.2d 12, 18, certiorari denied 348 U.S. 970, 75 S.Ct. 528, 99 L.Ed. 755.

■ The recommendation continues, citing defendant's responses to questions of the hearing officer which, at the minimum, create serious doubt as to defendant's sincerity of opposition to non-combatant military service, and justify the conclusion that he failed to establish his claim as a conscientious objector to participation in war in any form.

Those responses are: "When asked whether he could not accomplish the same purpose (preaching the Gospel) in the armed forces, he said that the Chaplain Corps is divided into faiths which is not the real way. When asked what prompted him to answer Series XIV of his classification questionnaire as he did, registrant stated that long before, when he was seven or eight years old, he had decided he would not go into the army and he realized that the time had come to do something about it. He said that when he first conceived this idea he had thought that he would go into some noncombatant branch where he would not be required to bear arms. When questioned further about non-combatant participation, he said that he would not feel right about giving his allegiance even in that capacity as he owes his allegiance to God rather than to a nation. He was then asked whether he thought God would disapprove of his going into the Medical or hospital corps, to which he gave no answer."

Defendant in his answer to the recommendation in effect sets forth the position taken by the Jehovah Witnesses and reiterates that sect's beliefs with regard to military service. In the final analysis he seeks exemption from service because of his membership in Jehovah's Witnesses on the premise that the sect as a group is entitled to exemption. But the question is not, to repeat the point made at the outset, what religious sect or organization defendant belongs to, nor what the teachings of that sect are. The inquiry is directed to the sincere belief of defendant and the extent of his conscientious objection to military service. Campbell v. United States, 4 Cir., 1955, 221 F.2d 454.

■ While it is true that the bare adverse recommendation of the Depart-

ment of Justice cannot in and of itself supply the basis in fact necessary to sustain the Board's determination, United States v. Stasevic, D.C.S.D.N.Y.1953, 117 F.Supp. 371, reversed on other grounds sub nom. United States v. Vincelli, 2 Cir., 215 F.2d 210, rehearing denied, 2 Cir., 1954, 216 F.2d 681, it is equally true that the recommendation may set forth the facts upon which it is founded and those facts may well constitute the basis in fact which supports the Appeal Board's classification. Tomlinson v. United States, supra; Imboden v. United States, 6 Cir., 1952, 194 F.2d 508, 513, certiorari denied 343 U.S. 957, 72 S.Ct. 1052, 96 L.Ed. 1357.

"With due regard for the policy of Congress, which was to make review within the Selective Service System final in all cases where there was conflicting evidence or where two inferences could be drawn from the same testimony, we cannot hold that [defendant] was wrongfully denied the conscientious objector classification. In short there was basis in fact for the Board's decision." Witmer v. United States, 348 U.S. at page 383, 75 S.Ct. at page 396.

### Walter Herold

Defendant filed his questionnaire in October 1952 at which time he did not claim any exemption from service. He received his pre-induction notice on May 3, 1954. On June 1, 1954, defendant wrote his local board advising them of his change in religious beliefs and requesting the special form for conscientious objectors, which he filed on June 8, 1954.

According to defendant's own statements he was reared as a Lutheran and was such as of January 1954, though he had not attended Lutheran services since 1950. His parents, two sisters and a brother were and still are members of the Lutheran faith. He changed to the Jehovah Witness religion in March of 1954 and began attending ministry school in April of that year; his activities with Jehovah's Witnesses began in May 1954 when he began to preach door-to-door.

He was baptized a Jehovah Witness on November 13, 1954.

In Form No. 150 filed by defendant with the local board on June 8, 1954, he stated in question (3) Series II that he had been "taking the course of study given by the Watch Tower Bible and Tract Society for the past three months, using the Bible aids published by the Society." That statement was in response to the question, "how, when, and from whom or from what source you received the training and acquired the belief which is the basis of your claim" of conscientious objector to participation in war in any form.

In question No. 7 of the same series defendant answered that he had never given public expression, written or oral, to the views forming the basis of his claim for conscientious opposition. His views on the use of force were stated in his answer to question No. 5, that "I believe in the use of force only in repeling (sic) a bodily attack on myself or to repel a person that breaks into my home * * and only as a last resort."

After a hearing before his local board defendant was again classified 1–A, and from that he appealed to the Appeal Board. His file was sent to the Department of Justice and in due course defendant was given a hearing before a hearing officer on April 5, 1955. At this hearing defendant stated that he had been rejected for service in the Naval Reserve in March 1952 on medical grounds (hernia), and also that he had applied for enrollment at Kings Point Military College in August 1953, which application became lost or mislaid. Defendant was accompanied to the hearing by a Miss Carol Gunn and it developed that they had been "keeping company" for about two years, and while the hearing officer stated in his report that they intended marriage, defendant in answer to the recommendation of the Department of Justice denied that to be a fact.

The hearing officer found that defendant "showed a complete lack of knowledge and understanding of the Bible and the passages which he quoted from writ-

ten notes which he brought with him to the hearing," although he based his claim for exemption on his study of the Bible. The officer further reported that Miss Gunn displayed a more comprehensive knowledge of the Bible and the teachings and doctrines of Jehovah's Witnesses than defendant, and attempted to prompt and elaborate on answers of defendant. Both Miss Gunn and defendant claimed that her joining the Witnesses was due to defendant's preaching efforts towards her.

During this hearing defendant stated that he was introduced to a Fred Schmidt in or about April 1954, and that he began a weekly study of the Bible following a one-hour presentation of the Bible given him by this Mr. Schmidt. On April 22, 1955, defendant sent to the Selective Service Board some reference letters to be included in his file and attached thereto a list of signatures of persons attesting to the sincerity of defendant in his beliefs as an ordained minister of Jehovah's Witnesses. Heading the list was what purported to be the signature of one Fred Schmidt who in effect claimed to know defendant for two years.

The hearing officer concluded on the basis of the entire record before him, and on the testimony of Miss Gunn and defendant, "that the registrant's claim as a conscientious objector is not made in good faith, and that he is not sincere in his claimed conscientious objections based on religious training or beliefs."

■ From a review of the entire record that came before the Appeal Board and upon which they affirmed the classification given defendant by the local board, this court cannot say that there was no basis in fact for its determination. On the contrary, the following evidence found in the record, at the least in its totality, supplies that necessary basis: the coincidence of religious activities with the impending pressure of the draft board—claiming exemption about a month after notice of pre-induction physical; defendant's display of little knowledge or understanding of the

Bible though his conscientious objections were based upon his study of the Bible, and the hearing (at which he made such display) was over a year after he claimed to have begun seriously to study the Bible; several inconsistencies in defendant's testimony, and the poor impression of credibility made upon the hearing officer by defendant via appearance and demeanor.

■ Defendant's own statements support the conclusion that his opposition to participation in war in any form was based on grounds other than his personal, sincere objection thereto derived from religious training and belief. He stated at the hearing before the local board that he objected to joining the army because he wants to preach (S.M. p. 11). He agreed that preaching in the army would be serving God but he believed he could do more on the outside because he would have more time. (S.M. pp. 13–14). In his letter replying to the Department of Justice recommendation (p. 2) he in substance declared that when he had realized he must dedicate himself to Jehovah, and one of the things required was not to use carnal weapons, then he could no longer entertain the idea of any form of military service but rather his object was to be a minister of God. That may be interpreted as meaning that when defendant joined the Witnesses, embraced the doctrines thereof, and learned that one of its teachings was not to use carnal weapons, he felt that to remain faithful to his adopted religion he had to resist induction into the armies of this world. But membership in a particular sect and adherence to its teachings is not sufficient to establish the necessary subjective prerequisite to qualify a registrant for the exemption from all military service as a conscientious objector. See United States v. Simmons, 7 Cir., 1954, 213 F.2d 901, reversed on other grounds 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453. Nor is "[a]n objection, on religious grounds, to any assignment which would take the registrant away from his missionary activities, * * * an objection which the Act recognizes." Tomlinson v.

United States, supra, 216 F.2d at page 18.

Defendant did not sustain the burden of establishing his right to the claimed exemption.

Defendant claimed prejudicial error in that he was not informed of a letter sent to the Appeal Board intermediate the Department of Justice recommendation and his reply thereto. The letter apparently was sent by a personal friend of defendant to whom defendant had exhibited the adverse recommendation. The over-all tenor of this letter is to emphasize defendant's sincerity of belief in the doctrines of Jehovah's Witnesses and his excellent character. The writer, in his overzealous effort to convey his message, made certain statements which if true would tend to show that defendant had engaged in activities of Jehovah's Witnesses earlier than he claimed, thereby allowing an inference that defendant had lied in that regard. But then why would defendant deliberately misstate a fact which would be more to his advantage to tell truthfully. Under the circumstances the court would be more inclined to regard the writer in error if anyone, and that the Appeal Board, if it considered the letter at all, must have reached the same conclusion.

 However, we consider the failure to disclose the receipt of the letter as not prejudicial to defendant, and in any event feel there should be no duty cast upon the Board to make such disclosures (incurring further delay) whenever persons over whom they have no control volunteer to send such letters, at least as in the instant case, where there is no indication that the Board considered the letter in its determination which is otherwise amply supported by the record. See 32 CFR 1626.24(b).

All that appears is that the Board placed the letter in the file and did so presumably to avoid possible unfounded accusations of concealment which may be made by the writer himself.

 Defendant also ·claims prejudicial error because of the court's refusal to honor his demand at trial for a copy of the Federal Bureau of Investigation report. No claim was made that the résumé omitted any specific unfavorable fact. Besides, it would seem that the unfavorable recommendation of the Department of Justice was not based upon any unfavorable evidence in the F. B. I. report but rather on defendant's own statements. Accordingly, defendant was not entitled to the report. See United States v. Stasevic, supra, 117 F.Supp. at page 374; United States v. Wider, D.C. E.D.N.Y.1954, 119 F.Supp. 676, 683.

### Fred August Heise

Defendant was born November 12, 1932. He was raised a Lutheran. His parents, two sisters and a brother are presently members of the Lutheran Church as was defendant until some time in April 1953. He has one other brother who is a member of Jehovah's Witnesses, and it is through this brother that defendant claims to have become interested and active in the sect.

Defendant registered on October 19, 1951, and was classified 1–A on October 25th of that year. After a physical examination he was classified 4–F, and about a year later reexamined and reclassified 1–A.

On April 1, 1953, he was reclassified I–S(c) which is a student deferment, having satisfied the Board that he was then enrolled in the New York Community College. This classification by its terms was to expire on February 1, 1954.

On February 4, 1954, he was reclassified 1–A, and on the 8th of that month requested the opportunity to appear before the Board to "appeal" that classification and seek a continuation of his student deferment until graduation a year later. He was granted a hearing on the 18th and then for the first time informed the Board of his conscientious objection. The Board continued him in 1–A and pursuant to his request mailed him the special form No. 150 for conscientious objectors which he returned on March 4th.

On March 18, 1954, the Board voted to *reopen* defendant's classification and notified him to appear on the 25th. On April 22, 1954, he was classified 1-A by unanimous vote of the Board and so notified the following day.

Subsequently the defendant appealed, and following the advisory recommendation of the Department of Justice, the Appeal Board affirmed the 1-A classification. Defendant appeared for induction as ordered on October 4, 1956, but refused to be inducted, whereupon this indictment followed.

Defendant claims that he was denied due process at his appearance before the Board on March 25, 1954, following the reopening of his classification on the 18th because the hearing was conducted by only one member of the Board and since he was classified at that hearing by a single member of the Board the classification was void. This, he argues, was in contravention of the statute, 50 U.S. C.A.Appendix, § 460(b) (3), and the implementing regulations, especially 32 CFR 1604.56, which requires a majority of the members of the local board to transact business, which according to the statute is to hear and determine all questions relating to the inclusion or exemption of persons for military service. Defendant further claims that another regulation, viz., 32 CFR 1624.1 which allows for an appearance by a registrant *after* his classification before a single member of the Board in order that the registrant may discuss his classification and present additional evidence relative to his claim, is invalid as in violation of the statute.

■■■ With regard to this last contention we disagree with his thesis but we never reach the ultimate question therein involved for the hearing in issue was not such as is contemplated by 32 CFR 1624 but was no more than a preclassification hearing, discretionary with the Board to aid it in its deliberations relative to classification of defendant in the first instance. A hearing as per 1624 is one requested by registrant within ten days *after* classification and to which

he has an absolute right. Once the Board reopens a registrant's classification, as it did in this case on February 18, 1954, it is as if the registrant had never before been classified, and upon the subsequent classification he has all the attendant rights of personal appearance and appeal. 32 CFR 1625. Cf. United States v. Vincelli, 2 Cir., 1954, 215 F.2d 210, rehearing denied, 2 Cir., 216 F.2d 681; United States v. Romano, D.C.S.D.N.Y.1952, 103 F.Supp. 597.

■■■ Defendant's first claim rests upon the assertion that he was classified at the March 25th appearance by a single member of the Board. This we find to be contrary to the fact. It is clear to the court that the only classification following the March 18th reopening was that of April 22nd notwithstanding a notation to the contrary on the defendant's cover sheet and some cryptic notations on the margin of his form No. 100. This is obvious because in every instance in which the Board voted on defendant's classification there is the appropriate recordation of its action in the space provided for in form No. 100, and every such vote was followed by a mailing of form No. 110 shortly thereafter informing defendant of the vote taken. There is no such card mailed after the alleged March 25th classification nor is there a recordation of the alleged classification in the space where it would regularly appear. The April 22, 1954, vote is recorded and the form No. 110 card was mailed on the 23rd.

Facts forming the basis in fact for defendant's classification:

At the hearing before the Board on February 18, 1954, which defendant requested for the purpose of getting an extension of his student deferment, he notified the Board that since the preceding August he had become active in Jehovah's Witnesses and due to the teachings of that sect which he sincerely now believed, he sought deferment on religious grounds. Though it is not in itself determinative evidence, association of recent vintage with a religious organization whose precepts form the basis of

a registrant's opposition to military service is a fact to be considered on the question of the registrant's sincerity. When this fact is revealed, as in this case just two weeks after the registrant has been reclassified as eligible for immediate induction, and then upon an appearance requested for the purpose of gaining a continuation of a student deferment which has expired in accordance with the terms of its grant, it can understandably take on added significance.

In addition to the above there is fertile ground for doubt as to defendant's sincerity contained in his answers to the questions in Form No. 150 which he filed March 4, 1954.

In response to queries asking for information relating to his beliefs upon which he based his conscientious objections, and their nature, source and manifestation, defendant responded generally with statements of what Jehovah's Witnesses as a group believe. In Series II his answer to question No. 2 was, "The nature of our belief is briefly to vindicate Jehovah God's name and announce his Kingdom as the only hope for mankind. We are ambassadors of Jehovah God in a position of strice (sic) neutrality against participation and service in the armed forces." Question No. 5 he answered thusly, "Under some circumstances, we do believe in the use of force, such as in individual matters of protecting ourselves and our property from being destroyed or confiscated. This differs with engaging in the battles of the nations, which conflicts are political and for selfish aggression." Question No. 4, "We do not rely on any individual for religious guidance but look toward his word, the Bible for guidance." Question No. 3 of the same series asking how, when, and from whom or from what source he received the training and acquired his belief which is the basis of his claim as a conscientious objector, defendant stated, "Listening to radio station WBBR for over a year and associating with Jehovah's Witnesses has brought to me a better understanding of God and his purposes. In August 1952,

I started to attend Bible studies and other meetings at Kingdom Hall * * *, beginning August, 1953." In Series IV, question 2(b) defendant stated, "In August, 1953 I started having Bible studies and later attending meetings, lectures and other studies."

In answer to the recommendation of the Department of Justice he stated that he became active in the Jehovah's Witnesses in 1952, while enclosed with the answer he supplied letters of fellow Witnesses who attested to his association with Jehovah's Witnesses from August and November 1953. On this particular point there is apparent contradiction by the defendant which casts doubt on his sincerity.

On the whole we must confirm the existence of basis in fact supporting the Board's classification.

### James Wilson Parmiter

This registrant's application for conscientious objector classification was processed twice, i. e., he had two personal appearances before the local board, there were two separate recommendations by the Department of Justice after as many appeals and investigations by the Federal Bureau of Investigation into defendant's activities, and twice did the Appeal Board affirm defendant's 1–A classification by the local board.

The entire record demonstrates abundantly that defendant has been actively engaged in the Jehovah Witness work since 1950 with marked increase in such activity after 1952. It is undenied that he was reared in the faith and that his parents and two sisters are members thereof. Defendant has a younger brother who served in the armed forces, apparently making no claim to exemption.

Defendant's friends, neighbors and employers have attested to his good character and sincerity in his beliefs. The lone exception, if it may be called such, is a neighbor who opined that defendant claimed exemption in deference to his mother's wishes. No further support is

advanced for this bald opinion and therefore it will be disregarded by this court.

Another neighbor stated that defendant's mother became very upset because her other son refused to claim conscientious objection to military service. We fail to see this statement's relevancy upon defendant's sincerity and cannot therefore consider it, though it may well have influenced the hearing officer and the Appeal Board.

In the face of almost overwhelming evidence to support his prima facie case, the government, to support the determination of the Appeal Board has had to resort to carding the record to uncover seeming discrepancies between defendant's account of the time he devoted to Witness activities and that of the Company Servant and Assistant Company Servant for the Congregation of which defendant was a member, relating to the time defendant devoted to Witness work.

Upon examination and comparison of these alleged discrepancies it is apparent that no contradiction exists between them, but if anything, merely a lack of consistency in the use of terms by the individuals, and also that their accounts involve different periods of time.

After a hearing on September 20, 1955, the hearing officer reported that the "registrant's opposition to war and his claim for exemption from military service are not primarily based upon his religious training and belief, and that he has not met his burden of establishing that his claim is made in good faith." He stated that he was not convinced, and that he believed the registrant's real motive was a "selfish desire to avoid military service, and the economic consequences to himself and to his family." His conclusion, it was indicated, "stems from the registrant's statements at the hearing, and gave weight to the registrant's demeanor at the hearing as well as to all the material in the documents submitted by the registrant which may weigh in his favor."

██ Aside from being difficult of comprehension, there is moreover, no in-dication by the hearing officer of the facts upon which he based his conclusions, and being unsupported conclusions or opinions we cannot attribute to them the character of affirmative evidence and are constrained to look elsewhere in the record for the basis in fact to sustain the determination of the Appeal Board. Annett v. United States, 10 Cir., 1953, 205 F.2d 689.

A résumé of the F.B.I. report prepared March 16, 1955, contains information that defendant received a parking ticket in February 1952, and paid a fine of one dollar therefor; that his father had been arrested on a home-relief fraud charge 17 years earlier and defendant's mother had been arrested 21 years earlier on a charge of abandonment of children, later dismissed. It is nauseating to think that such information could be included in a registrant's file as bearing upon his sincerity in claiming exemption.

When all the "evidence" relied upon by the prosecution has been tested it appears that the only arguable or colorable ground upon which an affirmance could be supported arises from questions propounded by the local board relating to defendant's beliefs regarding the propriety of the use of force.

██ Defendant's recorded answer reads, "only believes in the use of force if *invaded* and would strike back in self defense." One's belief in his right to fight to preserve his life is not inconsistent with sincere religious belief against participation in any phase of war. Annett v. United States, supra, 205 F.2d at page 692; Clark v. United States, 9 Cir., 1954, 217 F.2d 511 rehearing denied, 9 Cir., 1955, 221 F.2d 480. It is apparent then that the local board is not quarreling with that proposition, but does consider of immense importance the use of the word "invaded." Whatever doubts may arise as to what the defendant meant by the use of that word, we would be loath to resolve them against him while he stands accused of a felony. In addition to its inherent ambiguity in context, the defendant took the stand in this trial and testified that he did not

use the word "invaded"; that his answers were written down by a member of the Board and not shown to him; that he had said he would never fight except in self defense and would not use carnal weapons.

■ We are mindful of the fact that the court in the Annett case spoke of the lack of substantial evidence, and likewise aware of the latest pronouncement of the Supreme Court in the Witmer case that the evidence need not be substantial to support the Board's classification. With proper regard for the applicable test we are convinced that the record in the instant case is devoid of affirmative evidence to rebut the prima facie case presented by defendant and was therefore without basis in fact to support the 1–A classification. That being so, the induction order was invalid and defendant must be acquitted of the offense charged.